MAYFIELD v. SMITH.

4-6138                                    146 S. W. 2d 715

Opinion delivered January 6, 1941.

*Steve Carrigan,* for appellant.

*James H. Pilkington* and *C. Van Hayes,* for appellee.

GRIFFIN SMITH, C. J. Van, Elmoe, and Carter Smith, and Jodie Johnson and Lollie Staggers, sued Ella,

Robert, and Albert Mayfield, and Farmers' Royalty Holding Company. The plaintiffs, who are appellees here, alleged they were owners and entitled to the immediate possession of eighty acres of land wrongfully withheld from them by the defendants.

Appellants' statement of the case is that the three Mayfields, children and heirs at law of J. G. Mayfield, deceased, had been in adverse possession since 1930.[1]

In 1898 St. Louis, Iron Mountain, and Southern Railway Company contracted to sell the land to J. G. Mayfield. At that time Mayfield lived with his wife on 160 acres adjoining the railroad eighty acre tract. Ella, Robert, and Albert Mayfield are the children of J. G. Mayfield and the wife with whom he lived at the time contract with the railroad company was made. In 1899 J. G. Mayfield's wife died. In February, 1900, he married Laura Smith, a widow. She had two children, Ophelia and Sam. In January, 1904, a new contract was made with the railroad company by the terms of which Laura [Smith] Mayfield was the ostensible purchaser. The railroad company's deed to Laura [Smith] Mayfield is dated January 4, 1906.

J. G. Mayfield lived with his second wife until she died in 1926.

Albert, Robert, and Ella Mayfield lived with their father at the time of his death. The land owned by J. G. Mayfield prior to 1898, and that conveyed by the railroad company to Laura Mayfield in 1906 had been under the apparent control of J. G. Mayfield.

Laura's heirs, after the death of their step-father, did not interfere with the possession of Albert, Robert, and Ella. It is contended by appellees that at Laura's funeral J. G. Mayfield told Sam Smith that Laura's heirs would get the 80-acre tract, to which Smith replied that the heirs did not need the property at that time, and added: "We will just let it stay like it is."

---

[1] Language of the complaint was that the Mayfields ". . . were and had been holding the land in actual, physical, open, exclusive, adverse, and hostile possession, and paying the current yearly taxes thereon, since the death of J. G. Mayfield in 1930. The Farmers' Royalty Holding Company [are holders of] a mineral deed executed to it [by the Mayfields] on the 31st day of August, 1931."

In 1936 appellees received information that Robert, Albert, and Ella Mayfield were claiming title to the eighty acres. Thereupon Sam Smith employed counsel to protect the rights of Laura Mayfield's heirs. Sam died in July, 1936, without filing suit. In September, 1939, appellees brought their successful action.

Grounds urged for reversal are: (1) Appellees, under Pope's Digest, § 8918, are barred by limitation. (2) Appellants should prevail as heirs of J. G. Mayfield. (3) Appellants are entitled to the land by adverse possession. (4) Appellants' plea of laches and stale demand should be sustained.

Appellants emphasize a transaction between J. G. Mayfield and George Rosenberg, wherein the former became indebted to the latter. There were threats of legal action. The contention is that Mayfield procured revision of his contract with the railroad company and consummated the new agreement under which title should be taken in Laura Smith Mayfield, in order to circumvent Rosenberg. The account was adjusted.

Opposed to this allegation of fraudulent purpose is the contention of appellees that Laura Smith Mayfield, as co-worker with her husband, helped pay for the new acquisition, and that they agreed the children of each should share in the property. It is also urged that the reasonable inference arising from testimony regarding conversations between J. G. and Laura Mayfield is that they intended Laura's children should inherit the eighty-acre tract and that J. G.'s children should take the 160 acres.

It is our view that this is the rational conclusion to be reached from all of the evidence and by reason of relationship of the parties. J. G. and Laura Mayfield lived together twenty-six years. Laura helped rear her husband's children by his first wife, giving them the same attention she bestowed upon her own children. All maintained a community of family interest and inter-dependence. If the occupancy of appellants and their payment of taxes was originally permissive, the statute of limitation did not begin to run until a hostile attitude

was taken by appellants and brought to the attention of appellees.

A finding that occupancy of the property was permissive disposes of the third exception.

As to the second proposition, clearly appellants could not inherit from J. G. Mayfield unless such ancestors owned the property.

While there is some showing of laches, we are not willing to say that the chancellor's findings are contrary to a preponderance of the evidence; and this view applies to all four points raised by appellants.

Affirmed.

SMITH and HUMPHREYS, JJ., dissent.

SMITH, J., (dissenting). The testimony shows that the contract to purchase this land was made by and in the name of J. G. Mayfield on February 24, 1898, which was two years prior to the date of Mayfield's marriage to Laura, his second wife. He then had children, and so did Laura, but no child was born to their union.

It was shown that before completing the payments required by the contract of purchase Mayfield contemplated that a suit would be brought against him for a large amount by one Rosenberg, so that, when his payments were completed, he took a deed to the land in the name of his wife, his second marriage having previously occurred.

Now, of course, equity would have granted Mayfield no relief on this account. He would have been left where he was found, with the title to the land in the name of his wife. But this is a circumstance which shows the nature and character of Mayfield's possession after the death of his wife, which occurred in 1926. Mayfield died in 1930.

It is argued that Mayfield's possession after the death of his wife could not be and was not adverse, for the reason that he had the right of possession as tenant by the curtesy. But this is not true, as no child was born to him by Laura, his second wife.

After the death of Mayfield in 1930, his own children remained in the exclusive possession of the land, and until this suit was brought, a period of about nine years, so that, with the possession of Mayfield himself, there has been an exclusive possession, apparently adverse to Laura's children, for a period of thirteen years.

The testimony is to the undisputed effect that the taxes were paid by Mayfield, or in the name of his estate, and by his heirs, these appellants. The land was at all times assessed in Mayfield's name, even before the death of Laura. After the death of Laura, Mayfield and his children exercised every act of ownership of which the land was capable. They cleared and put in cultivation additional portions of it, and cut and sold timber from time to time, for the value of which they are now asked to account.

The Mayfield heirs testified that it was always understood that the land belonged to their father, and not to his second wife, their stepmother; that their possession, after the death of their father, was open, adverse, exclusive, and hostile, and that they were unaware that Laura's children claimed any interest in the land until shortly before this suit was filed.

The case was not tried in the circuit court, but was tried before the chancellor, whose findings of fact are not binding upon us, if they appear to be contrary to the preponderance of the evidence, as we think they are.

The parties to this litigation are all *sui juris,* and have all lived near the land during all of the time covered by this litigation, and none of them were under any disability which prevented the running of the statute of limitations against them.

It is inconceivable to me that Laura's children should for a period of about thirteen years, have permitted Mayfield's children (there being no blood ties between them) to have occupied this land and to have appropriated all the rents and profits therefrom if they did not, in fact, recognize Mayfield's children as the owners of the land. Such generosity is not impossible, but is so highly improbable that I am not impressed with the truthfulness

of the testimony to that effect. It is far more probable that the suit was suggested by the execution of the oil lease which was canceled in the decree from which is this appeal.

It appears to me that if the law as announced in the case of *Smart* v. *Murphy,* 200 Ark. 406, 139 S. W. 2d 33, is applied here, we should reverse this decree.

Laches are pleaded, as well as adverse possession; but whether that plea is sustained or not, it does appear to me that the plea of adverse possession has been fully established, and that this possession was what it appeared to be to persons who dealt with the Mayfield heirs as owners of the property, and that their continuous possession (continuing for nearly twice the time required by law for adverse possession to ripen into title) has given the Mayfield heirs the title.

I, therefore, respectfully dissent; and am authorized to say that Mr. Justice HUMPHREYS concurs in the views here expressed.