WORTHEN *v.* RUSHING.

5-1405                                                   307 S. W. 2d 890

Opinion delivered December 23, 1957.

*T. H. Mayer,* for appellant.

*W. E. Phipps,* for appellee.

ED. F. McFADDIN, Associate Justice.   Appellee, Mrs. Rushing, filed suit to quiet her title to a house and lot, described by metes and bounds and also as located at 2515 Wright Avenue in Little Rock, and hereinafter called "the property".   She claimed title by adverse possession.   Appellant, Mrs. Worthen, resisted the suit; and by cross-complaint deraigned paper title from the sovereignty of the soil and prayed for possession and quieting of her title.   The Trial Court quieted Mrs. Rushing's title, and Mrs. Worthen has appealed.

The evidence established that for some years prior to 1931, Mrs. Worthen owned and occupied the property; but the house became dilapidated, the fences col-

lapsed; and in 1931 Mrs. Worthen vacated the premises. She claims that she planned to sell the property, but the proposed purchaser defaulted. At any event, shortly after Mrs. Worthen vacated in 1931, Mrs. Rushing and her husband and family moved into the house and took possession of the premises, without permission of anyone. The date of their entry was in March 1931. The house was in a terrible condition; and the Rushings set about to make the premises habitable. They installed doors and windows, had the house re-roofed, fenced the entire premises, and planted a garden. The Rushings' possession has been continuous since March 1931.

There is considerable dispute as to whether the Rushings ever paid or agreed to pay any rent. Mrs. Rushing says that after they had been in the house a few months, some man tried to collect rent and she refused to pay. But Mrs. Worthen's son-in-law testified that Mr. Rushing actually paid $15.00 rent at one time and a few dollars rent on other occasions in 1931 or early 1932. The testimony clearly indicates that if Mr. Rushing ever paid any rent, it was before 1933.

In September 1940 Mr. Rushing paid $61.19 to the State of Arkansas and obtained from the State Land Office a deed for forfeited town lots, which had this description: "Pt. W 1-2 SW 1-4 Sec. 9, Twp. 1-N, Rg. 12 W., one acre in city limits of Little Rock forfeited for 1929". Of course, the foregoing quoted matter was indefinite and void as a description of lands;[1] and it is not here contended that this deed was sufficiently valid to constitute color of title. But Mrs. Rushing claims that she and Mr. Rushing thought they had purchased the property by this deed. At that time, Mr. Rushing (now deceased) had obtained information from some source that the property had been originally owned by Mrs. Worthen and had forfeited to the State for taxes.

After Mr. Rushing and his son (a witness here) acquired the said deed from the State Land Office and

[1] *Hershey* v. *Thompson*, 50 Ark. 484, 8 S. W. 689; *Woodall* v. *Edwards*, 83 Ark. 334, 104 S. W. 128; and *Sutton* v. *Lee*, 181 Ark. 914, 28 S. W. 2d 697.

had it placed of record, they went to see Mrs. Worthen and told her that the Rushings had purchased the property from the State and were the owners thereof, and asked her if she had any deed or title papers; that, if she did, they wanted them. Mr. Rushing, Jr. says that Mrs. Worthen was entirely agreeable.[2] Mrs. Worthen admitted that the Rushings came to see her and wanted a deed; but she said she was sick and did not feel like talking to them.

This visit of the Rushings to Mrs. Worthen was in 1940. The Rushings evidently thought that they owned the property by virtue of the deed, because they made further and more substantial improvements on the property: they had a room added, had the entire house re-roofed, installed sewerage and electricity; and altogether have spent about $2,000.00 on the property. The Rushings have paid taxes and occupied the property ever since 1940, all the time claiming to be the owners. Of course, the description under which they paid the taxes was as indefinite as their deed, but they were claiming to be the owners of the occupied property.

Mrs. Rushing (as surviving entirety tenant) filed this suit to quiet her title on November 14, 1956. As heretofore stated, the Chancery Court entered a decree quieting Mrs. Rushing's title, on the basis, *inter alia*, of adverse possession;[3] and from that decree Mrs. Worthen has appealed.

---

[2] Here is his testimony: "Q. What was your purpose in going to Mrs. Worthen? A. Just like I said, after we got the tax title deed we found out that Mrs. Addie Worthen was the one that it was to and it went back for taxes, if I ain't mistaken, in her name. So we went to her to see if she had the original deed so we could see it and see whether or not it was recorded—I mean whether or not it corresponded. Q. That was the purpose? A. And to notify her that we had picked it up for taxes and she said, 'Mr. Rushing, I am glad you bought the place and I hope you make a good home and a nice home out of it'. She said that standing on the front porch . . . Q. You told her it was for 2515 Wright Avenue? A. That is right. I told her it was for 2515 Wright Avenue."

[3] The statute on adverse possession is §37-101 Ark. Stats. This is not merely a defensive statute but confers a title which can be enforced by suit. *Jacks* v. *Chaffin*, 34 Ark. 534; *Smart* v. *Murphy*, 200 Ark. 406, 139 S. W. 2d 33; and *Hart* v. *Sternberg*, 205 Ark. 929, 171 S. W. 2d 475.

The point that gives us most serious concern is whether the Rushings can claim adversely to Mrs. Worthen, after having paid rent in 1932, if they did pay such rent. Our cases hold, that when a person takes possession of property as a tenant and the relation of landlord and tenant is clearly established, then the tenant cannot claim adversely to the landlord. *Dickinson* v. *Ark. City Imp. Co.*, 77 Ark. 570, 92 S. W. 21, 113 A. S. R. 170; *Tyler* v. *Niven*, 194 Ark. 538, 108 S. W. 2d 893; and *Hoch* v. *Ratliff*, 216 Ark. 357, 226 S. W. 2d 39.

Mrs. Worthen claims that the Rushings paid her rent in 1932 and thus became tenants; but the testimony shows that in 1940 the Rushings entirely disavowed any possible tenancy relationship and never paid any rent from 1940 until this suit was filed in 1956, and all the time have been holding the property with Mrs. Worthen making no overt claim to it in any way. We have concluded that the Chancellor was correct in quieting Mrs. Rushing's title on the basis of adverse possession.

There are four factors that lead us to this conclusion:

(1)   The Rushings did not enter the property as tenants of Mrs. Worthen: they entered as trespassers.

(2)   The landlord and tenant relationship was never very clearly shown. Any payment of rent that Mr. Rushing might have made is a disputed item.

(3)   Our cases recognize that a tenant can acquire an adverse tax title. *Hoch* v. *Ratliff*, 216 Ark. 357, 226 S. W. 2d 39; *Sims* v. *Petree*, 206 Ark. 1023, 178 S. W. 2d 1016; and *Pickett* v. *Ferguson*, 45 Ark. 177, 55 Am. Rep. 545. Of course, the deed from the State of Arkansas to the Rushings was not sufficient to constitute color of title because of the indefinite description; but that deed at least showed the intention of the Rushings to own the property.

(4)   The fourth and final factor is that the Rushings, by personal conversation with Mrs. Worthen in 1940, informed her that the Rushings were claiming the

property as their own; and they completely disavowed any possible tenancy that might have existed theretofore.

Adding all these four factors together, we think the case at bar is clearly distinguished from any of the cases heretofore cited which hold that the tenant cannot claim adversely to the landlord. In *Lewis* v. *Harper,* 149 Ark. 43, 231 S. W. 874, Mr. Justice Wood, speaking for this Court, said: ". . . the law is that upon the disavowal of the landlord's title the relation of landlord and tenant ceases, and as between them the tenant becomes a trespasser, and the landlord may sue at once to recover possession though the leasehold term has not expired." In the case at bar there was, in 1940, a complete disavowal by the Rushings of whatever relationship had previously been between the Rushings and Mrs. Worthen; and there was at that time personal notice brought home to Mrs. Worthen that the Rushings were claiming the property. Mrs. Worthen sat idly by and made no claim to the property and did nothing from 1940 until the filing of this suit in 1956.

In *Sims* v. *Petree,* 206 Ark. 1023, 178 S. W. 2d 1016, Mr. Justice Robins speaking for this Court, and after stating the general rule that a tenant may not, while in possession under a rental agreement, claim that his possession is adverse to the rights of the landlord, nevertheless went on to state: ". . . but this Court has held that one who enters as tenant is not precluded from subsequently holding adversely to his landlord. *Gee* v. *Hatley,* 114 Ark. 376, 170 S. W. 72."

In the case of *Gee* v. *Hatley, supra,* Mr. Justice FRANK G. SMITH quoted the language from the article on "Adverse Possession" in 1 R. C. L. § 68 and the sub-title, "Whether the Tenant May Hold Adversely":[4]

" 'As a general rule, the possession of a tenant is that of his landlord, and will be so deemed until the contrary appears. This rule affects all who may succeed to the possession, immediately or remotely, through

---

[4] To the same effect is the text in 1 Am. Jur. 807, "Adverse Possession" § 32 *et seq.*

or under the tenant. Therefore, so long as the relation of landlord and tenant exists, the tenant cannot acquire an adverse title as against his landlord. This is merely one application of the rule that the tenant cannot deny his landlord's title. It is equally well settled that one who enters as tenant is not, merely because of that fact, precluded from subsequently holding adversely to his landlord. To do so, however, it is necessary to renounce the idea of holding as tenant, and to set up and assert an exclusive right in himself. It is also essential that the landlord should have actual notice of the tenant's claim, or that the tenant's acts of ownership should be of such an open, notorious, and hostile character that the landlord must have known of it. Such conduct on the part of the tenant necessarily furnishes the landlord with the legal title to enter and reposses himself of the premises'.''

In view of all of the foregoing, we reach the conclusion that the chancery decree was correct.

Affirmed.