John O'NEAL & Eileen O'NEAL, his wife
et al *v.* Leonard & Billie
Langston ELLISON, his wife

79-79                                    587 S.W. 2d 580

Opinion delivered October 15, 1979
(In Banc)

*Henry J. Swift,* for appellants.

*Moore & Gibson,* for appellees.

DARRELL HICKMAN, Justice. This is an appeal from a decree of the Mississippi County Chancery Court which decided the title to about 9.2 acres of land. The land lies between two farms, one owned by the O'Neals, who are the appellants, and the other owned by the Ellisons, the appellees. The chancellor found title to be in the Ellisons.

The appellants argue on appeal the chancellor was wrong for three reasons: First, the Ellisons had no title, or color of title, to the land; second, the chancellor improperly applied the law of landlord-tenant to this case; and, finally, there was no adverse possession of the land by the Ellisons.

We agree the chancellor improperly applied the law. However, on appeal we review a chancery case *de novo,* and if the chancellor's decision can be sustained on other grounds, it will be done. *Pharris* v. *Vanderpool,* 230 Ark. 233, 321 S.W.2d 757 (1959). We find a preponderance of the evidence supports the appellees' claim of adverse possession and accord-

ingly affirm the decree.

The O'Neals own farmland in Section 27, having bought it in 1965. The Ellisons own farmland in adjoining Section 26, having purchased it in 1951. The two farms were separated at the disputed place by a turn-row, a dirt road of sorts that was used by tractors to turn around at the end of a row.

In 1967, the O'Neals leased the Ellisons' farmland in Section 27 and it was agreed since the O'Neals would farm land in both Section 26 and Section 27, the turn-row should be plowed under. It was plowed under and for 9 years the O'Neals farmed the Ellisons' land under a lease.

At about the time the lease was made, some sort of agreement was made between the parties about having the land surveyed later to locate the boundary between the farms. Mr. O'Neal testified the agreement was to *establish* the boundary line; the Ellisons' testimony was that the survey was to simply *relocate* the boundary line, which they considered to be the old turn-row.

After 9 years had lapsed and the O'Neals had surrendered possession of the Ellisons' land, a survey was made. According to the survey the 9.2 acres was an encroachment on Section 26, land to which the O'Neals had record title.

The Ellisons filed a quiet title suit relying on their record title; the O'Neals were not named parties. The O'Neals joined in the suit anticipating there might be a dispute over the 9.2 acres by adverse possession.

At the conclusion of the trial the chancellor ruled the O'Neals were estopped as a matter of law from disputing the Ellisons' claim because of the landlord-tenant relationship that had existed between the parties. While the chancellor did not directly rule on the claim of adverse possession by the Ellisons, he did rule there were no other adverse claimants except the Ellisons to this land.

We have no difficulty affirming the decree on the basis of

adverse possession. The Ellisons had purchased their land in 1951; the farm was leased to others for several years. The Ellisons then farmed this particular 9.2 acres for one or two years before they leased it to the O'Neals; it was farmed by the O'Neals for 9 years under lease, without any hint of an adverse claim.

The O'Neals argue that since they had record title to all land in Section 26 and the Ellisons had no record title, or color of title, the chancellor was wrong in his decision.

Color of title is not an essential element to a claim of adverse possession if there is actual possession, and there is no doubt the Ellisons possessed the land in excess of 11 years. *Coons v. Lawler*, 237 Ark. 350, 372 S.W.2d 826 (1963).

Mr. O'Neal's testimony actually buttressed the Ellisons' claim of adverse possession. He readily admitted he farmed the land in question for 9 years thinking it belonged to the Ellisons; he never knew of anyone else who claimed it; he recognized that the Ellisons claimed the land east of the turn-row, and never controverted it. The O'Neals' claim is like many in a boundary line case. Once it is discovered that land lies within legal land calls, it is presumed it is owned by the record title holder. As our many cases demonstrate, that is not always the case. The virtually undisputed evidence was that the Ellisons had possessed and claimed this land since they bought it, with no objection from anyone, including the O'Neals.

The chancellor, no doubt, thought he found a ready answer to the question of adverse possession. He ruled the question of title was resolved because the O'Neals had been tenants of the Ellisons and were estopped from disputing their landlord's claim.

The O'Neals were not estopped because there was no longer a landlord-tenant relationship and the O'Neals were not in possession of the land.

Generally, a tenant is estopped to deny his landlord's title when the tenant is in possession of the land. *Lewis* v.

*Harper,* 149 Ark. 43, 231 S.W. 874 (1921). However, after the tenant surrenders his possession, he is no longer estopped to deny his landlord's title. See *Washington* v. *Moore,* 84 Ark. 220, 105 S.W. 253 (1907) and 49 Am. Jur. 2d §130. There are exceptions to these general rules. There are circumstances wherein a tenant can deny a landlord's title while possession is retained. We recognized this principle in the case of *Worthen* v. *Rushing,* 228 Ark. 445, 307 S.W.2d 890 (1957). There are also instances in which a tenant can be estopped, after surrending possession, to deny a landlord's title; for example, where fraud or misrepresentation on the part of the tenant is involved. See generally 49 Am. Jur. 2d § 129. However, none of these circumstances are present in this case.

While the O'Neals were not estopped as a matter of law to contest the Ellisons' claim, a preponderance of the evidence clearly supports the finding of the chancellor that the Ellisons should have title to this land.

Affirmed.

GEORGE ROSE SMITH, BYRD and PURTLE, J.J. concur.

GEORGE ROSE SMITH, Justice, concurring. Inasmuch as we try chancery cases de novo, I see no reason to bother ourselves with the question of the O'Neals' possible estoppel to dispute their landlords' title. The Ellisons' proof of title by adverse possession was overwhelming. They acquired their title in 1951 and, through tenants, continuously farmed the land, including the 9.2 acres now in controversy, for some 14 years before the O'Neals bought the land to the west. The O'Neals' property had been mostly wooded and was first cleared and cultivated by O'Neal in 1966. Before that, Ellison had farmed his land up to the line that was marked by the edge of the woods and eventually became the turnrow that is admitted to have existed.

O'Neals' testimony that he and Ellison agreed, when the turnrow was plowed under, to fix the true line by means of a survey at some indefinite future date is of no consequence. The Ellisons already had title by adverse possession; so any

executory agreement to readjust the boundary line would not reinvest the title. *Hudson* v. *Stillwell*, 80 Ark. 575, 98 S.W. 356 (1906). Moreover, although O'Neal was decidedly evasive on the witness stand, he eventually admitted that under the lease from the Ellisons he cultivated the tract now in controversy and understood that the tract belonged to the Ellisons. He also admitted that his only claim to title is based on the survey that was made shortly before this suit was filed. Thus the great weight of the evidence shows that the Ellisons acquired title by adverse possession through tenants for about 25 years. Any possible question about the O'Neals' estoppel to question the Ellisons' title becomes immaterial.

CONLEY BYRD, Justice, concurring. I concur in the result but I disagree with the majority's statement that the trial court erred in stating that the O'Neals were estopped to deny Ellisons' claim of adverse possession.

The facts show that the Ellisons had possessed the area from sometime in 1951. Beginning in 1967, the O'Neals leased the land in dispute for nine consecutive years. Thus during the nine years that the O'Neals leased the lands without renouncing the tenancy, the possession of the O'Neals was the possession of the Ellisons. In *Worthen* v. *Rushing*, 228 Ark. 445, 307 S.W.2d 890 (1957), the authority upon which the majority relies, we stated:

> "As a general rule, the possession of a tenant is that of his landlord, and will be so deemed until the contrary appears. This rule affects all who may succeed to the possession, immediately or remotely, through or under the tenant. Therefore, so long as the relation of landlord and tenant exists, the tenant cannot acquire an adverse title as against his landlord. This is merely one application of the rule that the tenant cannot deny his landlord's title. It is equally well settled that one who enters as tenant is not, merely because of that fact, precluded from subsequently holding adversely to his landlord. To do so, however, it is necessary to renounce the idea of holding as tenant, and to set up and assert an exclusive right in himself. It is also essential that the landlord should have actual notice of the tenant's claim,

> or that the tenant's acts of ownership should be of such an open, notorious, and hostile character that the landlord must have known of it. Such conduct on the part of the tenant necessarily furnishes the landlord with the legal title to enter and repossess himself of the premises."

We also held in *Cox* v. *Daugherty*, 75 Ark. 395, 36 S.W. 184 (1896), that in computing the adverse possession of a landowner for purposes of the statute of limitations, the time during which his tenant held adversely to the landlord by attornment to another should not be included until the notice of the tenant's attornment was made known to the landlord. To the same effect see *Kimble* v. *Willey*, 204 F. 2d 238, 38 A.L.R. 2d 814 (8th Cir. 1953), holding that a tenant's attornment to another would not interrupt the computation of the landlord's period of adverse holding until such time as the landlord obtained knowledge of the attornment. The annotator at 38 A.L.R. 2d 826 §2 quotes the general rule to be that the acknowledgment or recognition of title of a third person by one occupying land as the tenant of an adverse claimant does not interrupt the continuity of the landlord's (adverse claimant) possession.

Therefore as I view the authorities, including those cited by the majority, the possession of the tenant is the possession of the landlord until such time as the tenant gives notice to the landlord that the tenant is repudiating the landlord's title. Since appellants, the O'Neals, leased the lands from the Ellisons for more than the seven year adverse possession period without giving notice to the Ellisons that the O'Neals were repudiating the Ellisons' title, the O'Neals were estopped to deny that the Ellisons had been in possession under a claim of right for the statutory adverse possession period.

The title of the Ellisons of which the trial court addressed itself was Ellisons' claim of title by adverse possession.

For the reasons stated, I respectfully concur.

Purtle, J. joins in this concurrence.