## J. A. WARREN *v.* L. C. WARREN

CA 80-69                            603 S.W. 2d 472

Court of Appeals of Arkansas
Opinion delivered September 10, 1980

*Bob Scott*, for appellant.

*Mitchell, Williams, Gill & Selig*, by: *Theodore C. Skokos* and *Beverly Bassett*, for appellee.

James H. Pilkinton, Judge. This is a divorce case but the issues on appeal are confined only to (1) the division of property, (2) the trial court's failure to allow alimony and (3) the sufficiency of the award of attorney's fees made by the trial court for appellant's counsel.

Judy A. Warren and Lonnie C. Warren had been married for fifteen years at the time of the trial but had been separated for the last two years. Dr. Warren is in private practice as a dentist and teaches at the University of Arkansas Dental Hygiene School. Mrs. Warren is not employed, except on a part-time basis. Mrs. Warren filed a petition for divorce in October of 1978 and Dr. Warren filed a counterclaim also asking for a divorce. The court granted a divorce to the wife.

The trial court awarded Mrs. Warren all of the household furnishings, a 1976 Buick automobile, one-half of Dr. Warren's equitable interest in some real property which he owns jointly with his father, and one-half of the proceeds from the sale of Dr. Warren's 1971 Datsun automobile. Dr. Warren was awarded all of his dental office equipment and furnishings, and a 1977 Jeep. The court also ordered that the home, in which Mrs. Warren and the children are living, be sold and the proceeds divided equally between the parties. The court did not award Mrs. Warren any interest in her husband's accounts receivable. However, the trial court did order the husband to pay all of the family debts. The parties are the parents of two minor children, Bryce, age 11, and Rachelle, age 5. Mrs. Warren received custody of the children and Dr. Warren was ordered to pay $700 per month to the mother as child support. No alimony was awarded.

Counsel for Mrs. Warren was awarded a $100 fee at a temporary hearing in March of 1979 and an additional fee of $600 at the trial on September 29, 1979, at which time Mrs. Warren was awarded a divorce. Mrs. Warren has appealed from the decision of the trial court insofar only as the three matters mentioned above are concerned. There is no cross-appeal.

I

Appellant argues that the trial court erred by failing to award any portion of the accounts receivable to the wife. Counsel seems to agree, and the record would indicate, that the trial court was attempting to distribute all of the marital property one-half to each party in accordance with Ark. Stat.

Ann. § 34-1214(1) (Supp. 1979). We agree with appellant that accounts receivable may be treated as a marital asset with a provable net present value. *Riegler* v. *Riegler*, 243 Ark. 113, 419 S.W. 2d 311 (1967). While the decree did not spell out individual allocations in some of the specific items, including the accounts receivable, and while some of the value testimony was sharply disputed, it is apparent from the record that the value of the marital assets Mrs. Warren received, taken as a whole, equaled or exceeded the value of the property awarded to Dr. Warren. The husband was required by the court to pay all of the family debts amounting to $13,832.67. Under the record in this case, we are unable to say that the chancellor did not take the accounts receivable into consideration in making the property division. Nor can we say the trial court's action in the division of the property was clearly erroneous or clearly against a preponderance of the evidence. Equity cases are tried de novo on appeal upon the record made in the chancery court. *O'Neal* v. *Ellison*, 266 Ark. 702, 587 S.W. 2d 580 (1979); *Ferguson* v. *Green*, 266 Ark. 556, 587 S.W. 2d 18 (1979). However, we do not reverse the decision of the chancellor on a disputed fact question unless the decision is clearly against the preponderance of the evidence. Rule 52, Arkansas Rules of Civil Procedure.[1]

II

Appellant next argues that the trial court erred in holding appellee's interest in the Twin Lakes lot to be one-third equity. The testimony is undisputed that Dr. Warren and his father purchased the Twin Lakes lot for $5,000 under a sales contract as an investment. The contract did not set out the percentage of ownership. The evidence shows that appellee's father paid $1,000 down and Dr. Warren made $50.00 monthly payments, and is continuing to make $50.00 monthly payments. Dr. Warren testified that his father made an additional $1,500 payment. Appellant contends that the parties considered this to be a 50-50 partnership, appellee's father having contributed $2,500 and appellee making his contribution of $2,500 is the form of monthly payments of

---

[1]See also Cox and Newbern, *New Civil Procedure*, 33 Ark. Law Review 1, at pp. 66-67 (1979).

$50.00 each. Appellee contends that it is immaterial whether Dr. Warren and his father bought the Twin Lakes property as partners — with equal ownership — as that is not really the issue. Appellee claims the real issue is what equitable interest Dr. Warren has in the property for the purpose of awarding appellant one-half of the value of that interest. The property was valued at $8,000 but Dr. Warren and his father still owed $1,500 on the land. It is undisputed that Dr. Warren has paid only one-third of the purchase price and his father has paid two-thirds of it. The trial court found that the equitable interest of Dr. Warren in this particular property was $2,200, and that Mrs. Warren was entitled to receive one-half of that amount. We cannot say that the trial court's determination of this issue was clearly erroneous or clearly against the preponderance of the evidence. The burden was upon appellant to establish the nature and extent of appellee's property. It was for the chancellor to resolve the conflict in the evidence. *McCray* v. *McCray*, 256 Ark. 868, 514 S.W. 2d 219 (1974). After a careful review of the record, we are unable to say that the chancellor did not award Mrs. Warren her proper statutory share in value of the personal property.

## III

Appellant contends that the trial court erred in ordering the sale of the homestead. The chancellor ordered Dr. Warren to make the monthly mortgage reduction payments on the homestead, plus the pro rata payments for insurance and taxes, for the months of October, November, and December, 1979, after which the court ordered the homestead sold and the net proceeds divided equally between the parties. The decree had the effect of dissolving the estate by the entirety under which the parties held title to their home.

The record shows that the parties were married on June 13, 1964, in Little Rock, Arkansas, and then moved to Memphis, Tennessee, where appellee was a third-year dental student. Mrs. Warren provided income while he completed dental school, after which they returned to Little Rock, where Dr. Warren started teaching at the University of Arkansas

Dental Hygiene School and began his private dental practice. Their standard of living continued to increase. They constructed a new home in 1976 which was then appraised at $80,000. According to the evidence the home was worth considerably more at the time of the trial. Dr. Warren paid income taxes in 1977 on an adjusted gross income of $45,934. In 1978 his adjusted gross income was $58,200. At the time of the trial, his 1979 adjusted gross income had not been determined but the testimony indicates that it would be somewhat less than the receding years. Dr. Warren had deposited $1,500 a month to the household account for approximately three years prior to the trial.

Mrs. Warren had devoted most of her time to caring for the two children and had not been employed on a regular basis. She has worked only part time on a substitute basis in a doctor's office when the regular staff is on vacation, or when some of the regular employees were ill. She only worked then a day or two at a time, as her primary task was to care for the children. When Mrs. Warren worked in the summer of 1979, arrangements had to be made for child care during her absence. With her present training, or lack of it, the evidence shows that the earning ability of the wife is limited.

After a careful review of the evidence, we have concluded that the portions of the decree ordering the sale of the homestead and refusing to award any alimony to the wife are clearly against the preponderance of the evidence on those issues. We consider the question of the sale of the home and the matter of alimony together as they both relate to the welfare of the children and of the wife. Mrs. Warren has responsibility of rearing two minor children. Even Dr. Warren agreed in his testimony that the children have an attachment to their home and it would be disruptive to move them. In view of the earning ability of Dr. Warren, the age and lack of vocational skills of Mrs. Warren and the economics involved in the sale and acquisition of replacement facilities, a preponderance of the evidence does not support the chancellor's decision that the homestead should be sold at this time, or that no alimony be awarded. Trial de novo on appeal in equity cases involves determination of fact questions as well as legal issues; and this court determines

what the finding of the chancellor should have been on the record before us. *Ferguson* v. *Green*, 266 Ark. 556, at 564, 587 S.W. 2d 18 (1979). The welfare of the minor children would best be served by the mother being permitted to retain possession of the home until the children have reached an age that the dispossession would not disrupt their lives so totally as it would at this time. Under all circumstances existing in this case we have concluded that the trial court should have awarded possession of the homestead to Mrs. Warren, until both children are of age or leave the home, or until she remarries or decides to reside elsewhere during the minority of the children. The testimony shows that the mortgage payment on the home is $393.36 per month, plus the pro rata payments for the insurance and real estate taxes on the house, in the amounts of $37.00 and $34.00 respectively. The appellee shall be required to make these monthly payments for the calendar year 1980. Thereafter some alimony will be required for Mrs. Warren to be able to meet these monthly obligations. Effective January, 1981, Dr. Warren shall pay the sum of $250.00 per month as alimony to Mrs. Warren, during the time she is in possession of this property, to be applied by her against the house payment monthly and the pro rata obligation for insurance and real estate taxes on the home. Mrs. Warren will be required to pay the difference and will be responsible for making these payments during the time that she is in possession of this property. The decree of the chancery court is modified as indicated.

## IV

Appellant contends the trial court erred in the award of attorney's fees to counsel for appellant. The trial court awarded a total of $700.00. Mrs. Warren contends that this award was inadequate. The trial court has considerable discretion in the allowance of attorney's fees in divorce cases. *Bowers* v. *Bowers*, 257 Ark. 125, 514 S.W. 2d 387 (1974); *Grumbles* v. *Grumbles*, 245 Ark. 77, 431 S.W. 2d 241 (1968). Such fees are not awarded as a matter of right but the granting or denial of attorney's fees is within the sound discretion of the chancellor. *Ryan* v. *Baxter*, 253 Ark. 821, 489 S.W. 2d 241 (1973). The chancellor is in a much better position to evaluate the services of counsel than an appellate court, and

unless a clear abuse of discretion is evident, the chancellor's action in fixing attorney's fees will not be disturbed on appeal. *Wiles* v. *Wiles*, 246 Ark. 289, 437 S.W. 2d 792 (1969). We cannot say that there was an abuse of discretion in evaluating and awarding the fee in this case.

The decree of the trial court is modified to award possession of the home to Mrs. Warren as herein provided, and to allow the alimony indicated, but is affirmed in all other respects. Counsel for the appellant is awarded an additional fee of $800 for services rendered in this court on appeal.

Affirmed as modified.

NEWBERN and PENIX, JJ., dissent.

HAYS, J., not participating.

DAVID NEWBERN, Judge, dissenting. Perhaps the least guarded secret in the review of chancery court cases is that appellate courts say the review is "de novo" when they plan to reverse, modify, or affirm the decree on grounds other than those stated by the chancellor.[1] If the case is to be affirmed, then the emphasis is upon the language which has been codified by the parenthetical addition in Ark. R. Civ. P. 52 which says "[f]indings of fact shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence) . . . ." In the law review article cited by the majority opinion, Mr. Cox and I suggested the addition of the parenthetical expression could have been intended to preserve the court's power to engage in "de novo" review of chancery cases.

Our supreme court has combined the "de novo" standard with the "clearly against" the preponderance of the evidence" standard in many cases.[2] The important distinc-

---

[1] *E.g., Ferguson* v. *Green*, 266 Ark. 556, 587 S.W. 2d 18 (1979) (modified); *O'Neal* v. *Ellison*, 266 Ark. 702, 587 S.W. 2d 580 (1979) (affirmed on other grounds); *State Farm Fire and Casualty Co.* v. *Switzer*, 257 Ark. 810, 520 S.W. 2d 245 (1975) (reversed).

[2] *E.g., Garot* v. *Hopkins & Coates*, 266 Ark. 243, 583 S.W. 2d 54 (1979); *Titan Oil & Gas* v. *Shipley*, 2457 Ark. 278, 517 S.W. 2d 210 (1975); *Moore* v. *Smith*, 255 Ark. 249, 499 S.W. 2d 634 (1973).

tion in the treatment of factual determinations upon review is, of course, with respect to chancery cases and others in which there is no jury and those in which a jury has made the initial factual determinations. I have no difficulty following either our supreme court's cases, or Rule 52, and applying them to cases coming before this court where there is a request that some factual determination be reviewed. However, I question whether we should have the kind of latitude permitted by the "combined" standard used before the adoption of Rule 52.

Rule 52 may or may not have caused a change in the review standard with respect to factual determinations in chancery proceedings. Either this court or the supreme court will probably have an opportunity to discuss that problem, however, I do not believe the opportunity is presented by this case. Though the parties bickered in their briefs and upon oral argument with respect to minor differences in asserted value of items of property, there was and is no disagreement as to the fundamental facts the majority uses in support of the proposed modification of the decree. The parties do not dispute the ages of their children, the employment record of the appellant, the earning capacity of the appellee, or general financial circumstances of each of them. The dispute is about whether the chancellor erred in denying certain items of support for the appellant, i.e., alimony and retention by her of the house in which the parties had dwelled.

In my opinion, the standard by which we review these matters is neither "de novo review" nor "preponderance of the evidence." Rather, in determining whether the basically undisputed facts should have given rise to relief requested by the appellant, we must determine whether the chancellor erred by the use of yet another review standard. The chancellor's decision should be reversed only if we find he abused his discretion.[3] *Gross* v. *Gross*, 266 Ark. 186, 585 S.W.

---

[3]See, *Walter* v. *Holman*, 245 Ark. 173, 431 S.W. 2d 468 (1968), where our supreme court indicated there is a difference by putting the "abuse of discretion" standard in the disjunctive in the following language:

> Although this court tries equity cases de novo on appeal, we do not disturb a chancellor's order or decree unless it is clearly against the preponderance of the evidence, or unless the chancellor has abused his discretion.

2d 14 (1979); *Neal* v. *Neal*, 258 Ark. 338, 524 S.W. 2d 460 (1975).

This review standard may be just as fuzzy as the combined "de novo" and preponderance of the evidence standards, but my opinion is that we must have a very strong sense that the chancellor erred before we can say he abused his discretion by failing to award a discretionary remedy. In this case I do not find any evidence or reason which compels me to say the chancellor abused his discretion. Therefore, I respectfully dissent.