Gula LYTLE *v.* Jimmie E. LYTLE

89-292                                                    781 S.W.2d 476

Supreme Court of Arkansas
Opinion delivered December 18, 1989

*James A. McLarty*, for appellant.

*John Norman Harkey*, for appellee.

DAVID NEWBERN, Justice. Mrs. Gula Lytle appeals the chancellor's order reducing the alimony she is to receive from Dr. Jimmie E. Lytle from $1500 to $250 per month. We cannot say that the factual findings of the chancellor were, as Mrs. Lytle contends, clearly erroneous, nor do we find we should reverse the chancellor's conclusion which we review *de novo*.

Upon a prior appeal we affirmed a decree divorcing the parties although we remanded the case because of an error in property division. *Lytle* v. *Lytle*, 266 Ark. 124, 583 S.W.2d 1 (1979). The alimony award was not contested in the earlier appeal. In 1988, Dr. Lytle petitioned the court to reduce the alimony because of changed conditions. In his order the chancellor recited the following:

> (a) At the time of the divorce, Ms. Lytle received approximately $135,000.00 in liquid assets plus other property, and thus, over the years, has had available to her the investment income from that property, thus alleviating her need for alimony.

> (b) Dr. Lytle's income has decreased in recent years due to his cutting back in his medical practice in preparation for semi-retirement or full retirement.

> (c) Dr. Lytle has re-married.

> (d) Most importantly, the proof at the time of the divorce from Ms. Lytle was that she was not able to work and earn any money for herself because of her medical problems. However, since the divorce she has been employed earning a substantial income for herself.

> (e) Due to the fact she was working plus receiving investment income plus receiving full alimony award (which was fixed on the assumption that she would not be

able to work), Ms. Lytle should have been able to accumulate substantial savings over and above her needs for living expenses. The facts indicate that she did, in fact, accumulate substantial savings and passed such savings along to her children by way of periodic and substantial gifts to them.

■ Mrs. Lytle's brief states that the standard of review in challenging the chancellor's finding of changed circumstances is that we may not reverse unless we determine the findings to have been clearly erroneous, citing *Nix* v. *Nix*, 17 Ark. App. 219, 706 S.W.2d 403 (1986). The *Nix* case involved a child custody order. The court of appeals wrote that the findings of the chancellor resulting in a change of a custody order were to be affirmed unless shown to be clearly erroneous or clearly against the preponderance of the evidence, citing Ark. R. Civ. P. 52(a). The decision of the court of appeals, however, was apparently that the conclusion of the chancellor, which may be reviewed *de novo*, based on the facts he had found, was proper. We have held that, even in a *de novo* review we will not set aside the chancellor's decision unless it is "clearly wrong." *Pinkston* v. *Pinkston*, 278 Ark. 233, 644 S.W.2d 930 (1983).

Mrs. Lytle challenges some of the factual findings made by the chancellor as well as some of his conclusions based on those findings.

Tax records showed that Dr. Lytle's adjusted gross income between 1981 and 1987 peaked at $117,298 in 1983. It was $91,688 in 1984, $91,628 in 1985, $87,650 in 1986, and $77,963 in 1987. He is remarried, and his wife works in his clinic as a nurse without pay. He has been involved in property transactions with other physicians, suffering some reverses, and has incurred some debt. He testified that he was having to slow down his medical practice because of health problems and age and has, until recently, been paying the salary of an associate. He now has an arrangement with the associate whereby he will receive half the associate's medical practice income in exchange for supplying space, equipment, and other support for his practice. Dr. Lytle conceded he was beginning to earn some income from the arrangement.

Mrs. Lytle testified she recalled her testimony at the divorce

trial in which she told the chancellor of a back problem and back surgery she had undergone. There was thus reason to conclude that her physical condition would affect her ability to work if not preclude her from working. At the hearing on the modification petition she testified the problem had not reoccurred and she has been steadily employed, although in very low-paying jobs, since the divorce. The evidence showed that she had given large sums of money and other gifts to the adult Lytle children, one of whom is now a surgeon, and another of whom is in college at age 29. The money for these gifts apparently came from the property Mrs. Lytle received at the time of the divorce. She retains a substantial stock portfolio and a retirement account. Mrs. Lytle describes these facts as creating the "crux of the case." She argues that the alimony granted to her was not conditioned upon her inability to work and that she should not be penalized for her generosity toward her children.

While it is correct to say that the alimony was not conditioned on Mrs. Lytle being able to work, her disability at the time of the divorce was a fact in evidence, and that circumstance has undisputedly changed. It cannot be denied that had she not given away assets which could have produced income to her, her standard of living would be higher.

The evidence with respect to Dr. Lytle's financial condition and his prospective earning capacity is conflicting. Mrs. Lytle notes that while claiming to be slowing down, Dr. Lytle has entered into an arrangement with other doctors to open an afterhours clinic. She does not dispute his testimony that he has stopped accepting new obstetrics patients and that he has health problems which are slowing him down.

We cannot say that any of the fact findings in the chancellor's order are clearly erroneous. Nor do we, in our *de novo* review, necessarily disagree with the conclusion he reached to lower the alimony payments. The testimony about Dr. Lytle's finances was somewhat complicated as was that with respect to Mrs. Lytle's assets, both those expended and those which remain. As we have held many times, we must take into consideration the superior position from which the chancellor evaluates the credibility of the witnesses. *Rose* v. *Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984); *Sowards* v. *Sowards*, 243 Ark. 821, 422 S.W.2d 693

(1968). We cannot say the result reached was clearly wrong.

Affirmed.

PURTLE, J., dissents.

HAYS, J., not participating.

JOHN I. PURTLE, Justice, dissenting. I recognize the superior position of the chancellor to evaluate the credibility of witnesses. However, his superior position does not prevent this court from independently reviewing the law and equity of the case.

The husband has admittedly been paying taxes on more than $75,000 earned income per year. This, of course, is after deductions for expenses, depreciation, and other exemptions authorized by law. Additionally, he is now receiving one-half of the income of a young doctor who has come into practice with him. He paid this same doctor $60,000 in salary for the calendar year 1987. Not only will the appellee save this $60,000 in the future, he will also gain 50 percent of the income of his associate.

On the other hand, the appellant's income will be less than $10,000, including the reduced monthly alimony payments from the appellee. The reduced alimony payment probably will cover nothing more than medical insurance for the appellant. Few people can manage on an income of less than $10,000. Although the appellant may not have spent her money wisely, she is nevertheless in need of help at this time in her life. Certainly, a reduction may be in order, but the alimony payments should not be reduced so drastically. A court of equity has also been, historically, a court of conscience. Certainly, it seems to me, equity and justice in the present case demand that the appellee pay more than $250 a month to the appellant as alimony.