Monid B. MEARNS *v.* Joyce C. MEARNS

CA 96-683                                    946 S.W.2d 188

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered June 4, 1997

[Petition for rehearing denied July 2, 1997.]

*Shawn Sibley*, and *Bonner Law Firm, PA*, by: *Douglas W. Bonner, Jr.*, for appellant.

*Dennis C. Sutterfield*, for appellee.

ANDREE LAYTON ROAF, Judge. The appellant, Monid Burl Mearns, Jr., appeals from a decree of divorce, raising five points for reversal. Mr. Mearns asserts that the chancellor erred in: 1) setting the amount of child support he was ordered to pay; 2) refusing to award him alimony from the appellee, Joyce Coffman Mearns; 3) refusing to award him seventy-five per cent of the marital property; 4) finding him in contempt for planting a listening device in Mrs. Mearns's telephone; and 5) awarding Mrs. Mearns $8,000 of the $10,000 realized from the sale of the parties' 1961 Corvette. We hold that the chancellor abused his discretion in making the award of child support and in refusing to award alimony to Mr. Mearns, and reverse and remand on those two issues. However, we find no error with respect to the other three points raised by Mr. Mearns and affirm as to those issues.

On October 10, 1994, Monid Burl Mearns, Jr. (Monid), appellant herein, filed suit for divorce from his wife of 20 years, the appellee Joyce Coffman Mearns (Joyce). Monid had been the family's principal breadwinner for the first fifteen years of the marriage. When the Mearnses married, Joyce stopped working to raise the couple's two children. When the children reached school age, Joyce began working part-time.

In 1986, Dow Chemical closed its facility in Russellville where Monid worked on the production line. Rather than relocate to a Dow facility in Texas, Monid chose to remain in Arkansas, purportedly at his wife's behest. He invested all of his Dow retirement, savings, and stock in an auto-parts business. Later, Joyce convinced him that the family should also purchase a chicken farm from her relatives for her to operate.

However, shortly after they purchased the chicken farm in 1989, Joyce received a full-time position with the U.S. Postal Service, and Monid found that he could not operate both the auto parts store and the chicken farm. The Mearnses decided to sell the auto parts business and applied the proceeds to the mortgage debt on the chicken farm. Consequently, in 1989, raising chickens became Monid's full-time occupation. While chicken farming provided some tax advantages, it afforded the family relatively little regular income, so Joyce became the family's primary wage-earner. Monid also began to suffer from back and prostate problems as well as asthma and arthritis.

In 1994, Joyce allegedly left Monid for another man, taking the parties' teenage son with her. The break-up was acrimonious. Monid sold for $10,000 a 1961 Corvette that the Mearnses had hoped would bring as much as $35,000. Monid also apparently planted a listening device in Joyce's telephone. Joyce liquidated certain marital assets, and gassed Monid with pepper spray after ransacking his residence.

In the final decree, the chancellor awarded child support in the amount of $37.50 per week, without making reference to the Arkansas child-support chart or making any other findings of fact; denied Monid's prayer for alimony; divided equally all marital property not specifically apportioned by agreement of the parties; and found that the value of the 1961 Corvette was $16,000 and awarded Joyce $8,000 of the $10,000 sale price. Additionally, the chancellor found Monid in contempt for bugging Joyce's telephone and Joyce in contempt for committing battery upon Monid with pepper spray, and ordered each party to pay the other $500 in attorney fees.

## 1.  Child Support

At the conclusion of the final hearing, Monid moved in open court to have his child support reduced from $37.50 per week, the amount indicated by his original support affidavit dated October 24, 1994, which he had agreed to pay at the initial separation hearing. Monid argues that his income is below the corresponding family support chart amount awarded by the court. He con-

tends that the chancellor should have calculated his child–support obligation from his current support affidavit, dated October 19, 1995, which showed that his net income from all farming activities over the last ten months was a loss of $347.18. Moreover, he contends that his sole source of income was his chicken farm, and the court required him to abandon that endeavor to facilitate the sale of the farm.

Ordinarily, the amount of child support lies within the sound discretion of the chancellor, and the chancellor's findings will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *Scroggins v. Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990). While other factors may be considered in determining support, reference to the family support chart is mandatory. *Black v. Black*, 306 Ark. 209, 812 S.W.2d 480 (1991). A chancellor is allowed by statute to deviate from the family support chart, but the chart's presumptions shall be rebutted,

> [o]nly upon a written finding or specific finding in the record that the application of the support chart would be unjust or inappropriate, as determined under established criteria set forth in the family support chart . . . .

Ark. Code Ann. § 9-12-312(a)(2) (Supp. 1995).

Regarding self-employed payors, like Monid, the basis for support:

> shall be calculated based on last year's federal and state income tax returns *and the quarterly estimates for the current year.* Also the court shall consider the amount the payor is capable of earning or a net–worth approach based on property, lifestyle, etc.

*In re: Guidelines for Child Support*, 314 Ark. 644, 647, 863 S.W.2d 291, 294 (1993) (emphasis added). Clearly, this directive contemplates the continued self-employment of the payor. By ordering the chicken farm sold, the court relieved Monid of the source of income upon which his child support was based; his future income from the farm will be zero. Accordingly, simply assessing the same level of support that was based upon the income from his then viable business misapplies the guidance found in the supreme court's per curiam order. *See Jones v. Jones*, 43 Ark. App. 7, 858 S.W.2d 130 (1993).

■ Although the chancellor's deviation from the family support chart without making appropriate findings of fact constitutes an abuse of discretion, it does not relieve Monid of his obligation to support his child. We therefore reverse and remand the child-support issue to the chancery court to reconsider Monid's future child-support obligation, consistent with the dictates of Ark. Code Ann. §9-12-312(a)(2).

## 2. Alimony and Property Settlement

Although Monid raises as separate issues the chancellor's decision to award him neither alimony nor a disproportionate share of the marital property, because these arguments are related, we discuss them together.

Monid argued that the equities dictated that he should have been awarded both alimony and a larger share of the marital assets, because he needed these provisions to survive. While Joyce disputed Monid's entitlement to alimony and a more advantageous property settlement, she nonetheless conceded that Monid's long work history primarily involved manual labor, and although she claimed that he was a good auto-parts salesman, she nonetheless described his auto-parts store as a failure. Moreover, Joyce verified that Monid indeed had the health problems that he claimed.

■ While it is true that an award of alimony is not mandatory, and is solely within the chancery court's discretion, *Ducharme v. Ducharme*, 316 Ark. 482, 872 S.W.2d 392 (1994), we can reverse if the chancellor has failed to address the equities involved. *See Stevens v. Stevens*, 271 Ark. 248, 608 S.W.2d 17 (1980). We find that the instant case is just such a situation and is analogous to *Warren v. Warren*, 270 Ark. 163, 603 S.W.2d 472 (Ark. App. 1980), in which we reversed a chancellor's denial of an alimony award to an ex-wife of fifteen years, who lacked special job skills, and did not receive a property settlement that was substantially more than fifty percent of the marital assets.

■ The primary factors to be considered in the award of alimony are the needs of the spouse requesting alimony and the other's ability to pay. *Mulling v. Mulling*, 323 Ark. 88, 912 S.W.2d 934 (1996). In *Boyles v. Boyles*, 268 Ark. 120, 594 S.W.2d 17

(1980), the supreme court articulated a list of factors that a court may consider determining whether to award alimony. The list includes:

[1] the financial circumstances of both parties,

[2] the couple's past standard of living,

[3] the value of jointly owned property,

[4] the amount and nature of the income, both current and anticipated, of both husband and wife,

[5] the extent and nature of the resources and assets of each of the parties,

[6] the amount of income of each that is "spendable," available to each of the parties for the payment of living expenses,

[7] the earning ability and capacity of both husband and wife,

[8] property awarded or given to one of the parties, either by the court or the other party,

[9] the disposition made of the homestead or jointly owned property,

[10] the condition of health and medical needs of both husband and wife,

[11] the duration of the marriage,

[12] the amount of child support.

(citations omitted)

*Id.* 268 Ark. at 124, 594 S.W.2d at 20.

■ When we apply the *Boyles* factors to the instant case, we are compelled to conclude that the chancellor abused his discretion in failing to make an award of alimony to Monid. The evidence reflects that Monid is unemployed and without independent financial means, while Joyce has a secure job paying more than $40,000 per year, in addition to being the beneficiary of a trust fund set up by her parents. For most of the marriage, the Mearnses lived a comfortable lifestyle, residing in a single family residence and able to afford a variety of cars and trucks. The value of all the parties' property, real and personal, does not appear from

the record to be exceptional, and the proceeds from one of the most valuable assets, the 1961 Corvette, was divided $8,000/ $2,000 in Joyce's favor. As already noted, Monid is unemployed, but more importantly, at age 57 and in declining health, and without a college degree or professional license, it is unlikely that he will find a job that will enable him to approach a standard of living comparable to what he enjoyed during the marriage. Conversely, Joyce has a secure income, and during the pendency of the divorce was able to place a substantial portion of her salary into savings. Moreover, Joyce has retained the main instrumentality that enables her to earn her livelihood, her specially adapted delivery vehicle, while the court ordered the sale of the chicken farm that Monid had been operating. At age 43, Joyce is also apparently in better health than Monid. There is considerable evidence in the record documenting Monid's prostate and back problems, as well as asthma and arthritis, all of which was corroborated by Joyce's testimony. This is also a marriage of long duration: the Mearnses had been married some 20 years at the time they separated.

■ Because we find that the evidence in this case clearly supports an award of alimony to Monid, we reverse and remand to the chancellor to set an appropriate amount.

■ With regard to Monid's argument for a greater share of the marital property, alimony and property settlements are complimentary devices that a chancery court must employ to make the dissolution of a marriage of long standing as equitable as possible. *See Boyles v. Boyles, supra; see also Tortorich v. Tortorich,* 50 Ark. App. 114, 902 S.W.2d 247 (1995). While we agree with Monid's argument that the same facts and circumstances that would justify an award of alimony would also support an award of a disproportional share of the marital property, our review of the record supports Joyce's contention that virtually all of the marital property was disposed of by agreement of the parties, leaving only her savings accounts and retirement subject to division by the court. We note that the value of these assets apparently do not much exceed $10,000 and therefore, we cannot conclude that, in light of our decision to direct the chancellor to award alimony, giving him a greater than fifty percent share of these assets would

better redress the inequity complained of. We therefore direct the chancellor to look only to alimony to provide for Monid.

### 3. Contempt

Monid argues that there was no basis in law or fact for finding that he violated the temporary order, which enjoined the parties in "any manner from molesting or harassing each other." We disagree. The finding of contempt is a factual finding that will not be reversed unless it is clearly against the preponderance of the evidence. *Gatlin v. Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991). A review of the evidence presented at the contempt hearing clearly justifies the chancellor's finding.

An eavesdropping device was found on Joyce's phone by a telephone company employee, after Monid had unmonitored access to the instrument. Monid admitted at the hearing that he had used Joyce's phone after the separation hearing. A transmitter was also found attached to Joyce's phone lines, and Monid admitted that he was familiar with how to record a telephone conversation, and knew where to buy electronic equipment designed for that purpose. William Parks, the constable of Hector, Arkansas, observed Monid sitting in his truck, wearing headphones, within receiving range of the device, which could be received by a standard FM radio, and Monid confirmed that he was at that location on three or four occasions. Finally, Joyce testified that she did not place the device on her own phone, and that she felt "harassed" and frightened by Monid sitting outside her residence. Consequently, we cannot say that the finding of contempt was clearly against the preponderance of the evidence.

### 4. Apportionment of the Corvette Proceeds

In its November 3, 1994, Temporary Order, the chancellor directed Monid to repurchase the 1961 Corvette that he had sold for $10,000 shortly before filing his petition for divorce. The buyer refused to reconvey the automobile, and at the final hearing, the court heard testimony as to its value. In the final decree, the chancellor awarded Joyce half of the value that the court assigned to the car, or $8,000. Monid argues that the sale was proper and

that the chancellor er red in dividing the proceeds disproportionately.

A chancellor has discretion to determine whether an offset is appropriate when parties to a divorce expend marital property during the pendency of proceedings. *Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993). Among the factors to be considered is whether overreaching occurred. *Id.* The court may even intervene to defeat a fraudulent act by an estranged spouse before a petition for divorce is filed. *See Renn v. Renn*, 207 Ark. 147, 179 S.W.2d 657 (1944). We find that the chancellor properly exercised his discretion in this case.

Monid also argues that the court abused its discretion in qualifying Joyce's expert witness who testified about the value of the Corvette. We find this argument has no merit. Under Rule 702 of the Arkansas Rules of Evidence, the test for admissibility of expert testimony is whether specialized knowledge will aid the trier of fact in understanding the evidence or in determining a fact in issue. *Williams v. Ingram*, 320 Ark. 615, 899 S.W.2d 454 (1995). Whether to allow a witness to give expert testimony rests largely within the sound discretion of the trial court, and that determination will not be reversed absent an abuse of that discretion. *Wade v. Grace*, 321 Ark. 482, 902 S.W.2d 785 (1995). Absolute expertise concerning a particular subject is not required to qualify a witness as an expert. *Dildine v. Clark Equip. Co.*, 282 Ark. 130, 666 S.W.2d 692 (1984).

Joyce's witness, John Rogerson, a serious collector and Corvette enthusiast for twenty-six years, had entered Corvettes that he owned in classic auto shows, was familiar with the market value of older Corvettes, and had actually driven the car in question. We find no abuse of discretion in allowing Mr. Rogerson to offer expert testimony.

Finally, Monid argues that the value set by the court was clearly erroneous. He recounts a number of minor mechanical defects, and points to the testimony of his own expert witness who appraised the value as between $10,000 and $12,000 as support for his contention that the chancellor's finding was clearly against the preponderance of the evidence. We disagree.

We will not reverse a chancellor's finding of fact unless the decision was clearly erroneous. *Jones v. Jones, supra.* There is certainly substantial evidence to support the chancellor's finding. Experts for both Monid and Joyce agreed that the value of the Corvette exceeded $10,000, as did Monid himself, when he testified at the separation hearing. Moreover, it was undisputed that the Mearnses had hoped to get as much as $35,000 out of the vehicle when they sold it. Joyce testified that there was over $20,000 invested in the car, not counting the considerable number of hours Monid had spent refurbishing it. Finally, $16,000 was within the range of values stated by expert testimony. We find that the court was not clearly erroneous when it found the value of the Corvette to be $16,000.

Affirmed in part; reversed in part and remanded.

BIRD, GRIFFEN, and NEAL, JJ., agree.

PITTMAN and JENNINGS, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, dissenting. I respectfully dissent from that part of the majority opinion that reverses and remands the chancellor's decision regarding the child support and alimony.

Although this court reviews chancery cases *de novo* on the record, we will not disturb the chancellor's findings unless they are clearly against the preponderance of the evidence or clearly erroneous. *Lytle v. Lytle,* 301 Ark. 61, 781 S.W.2d 476 (1989); Ark. R. Civ. P. 52(a). In our review, we are to give deference to the chancellor's superior position in evaluating the witnesses and their testimony. *Lytle, supra.* Because there was conflicting testimony, the chancellor was in the best position to resolve the conflicts, and I am not convinced that his decision is clearly erroneous.

As to the issue of child support, the majority finds that the chancellor made his award without making reference to the child-support chart or making any findings of fact. Then, instead of simply remanding for the court either to refer to the chart or to make findings, the majority first finds error in "assessing the same level of support that was based upon the income from [appellant's] then viable business" because "[b]y ordering the chicken farm sold, the court relieved [appellant] of the source of income

upon which his child support was based." I disagree on both counts.

In October 1994, appellant filed an affidavit of financial means showing his weekly take-home pay to be $159.85. In the ensuing temporary order, appellant's child-support obligation was set at $37.50 per week, the exact amount referenced by the chart for one with appellant's admitted income. One year later, appellant submitted another affidavit, this one reflecting a net loss of $46.56 per week. Appellant testified that the value of chickens and his income from raising them had fallen sharply since his first affidavit. He also testified that he has health problems and is basically unemployable. Clearly, the court was not obligated to accept appellant's second affidavit or to believe appellant's testimony that he had a negative income as a chicken farmer and was otherwise unemployable. Notably, despite appellant's asserted inability to pay, he had been paying the $37.50 in weekly support during the pendency of the divorce action. Obviously, the chancellor believed that there had been no material change in appellant's income since 1994 and simply declined to reduce the amount of child support previously set, which was unmistakably the presumptive amount payable under the chart for appellant's previously admitted income. In my opinion, this satisfies the requirement that the court refer to the chart, and, since there was no deviation, no additional findings were necessary. I find no reversible error in the chancellor's award of child support.

Nevertheless, if the majority feels that it must remand the case for a more specific reference to the chart or for findings, it should do so without commenting on the correctness of the amount set in light of the order that the farm be sold. First, I cannot see that appellant has made any such argument in his brief. To the contrary, as I read his brief, appellant simply argues that the trial court was bound to accept as true his evidence of his present income as a chicken farmer, that the award therefore constituted a deviation from the chart, and that the court failed to make findings to support a deviation. Second, it has been our practice in such cases simply to remand for the chancellor to follow the dictates of the statute requiring reference to the chart or findings to support deviation therefrom. *See Black v. Black*, 306 Ark. 209, 812

S.W.2d 480 (1991); *Fontenot v. Fontenot*, 49 Ark. App. 106, 898 S.W.2d 55 (1995); *Roland v. Roland*, 43 Ark. App. 60, 859 S.W.2d 654 (1993). Third, to the extent that the majority's comment might imply that the chancellor's award is too high and should be reduced on remand, it overlooks a number of other factors that a chancellor could otherwise consider in making an award, including the amount a payor is capable of earning, *see McJunkins v. Lemons*, 52 Ark. App. 1, 913 S.W.2d 306 (1996), and the sums that a payor is likely to realize from a court-ordered sale of marital assets.

The majority has also found that, based on a disparity in the parties' incomes and "considerable evidence" of appellant's health problems, an alimony award to appellant is required. I disagree. There is very little in the record concerning appellant's purported health problems; most of what does appear consists of appellant's general, nondescriptive, and vague testimony. Moreover, the testimony fails to demonstrate that appellant is unemployable. Appellant testified that he has back problems that hinder his mobility and breathing, that he has prostate problems (consisting of an infection that "comes and goes"), and difficulty with his esophagus. The only medical testimony came from appellant's chiropractor, who stated that appellant has a degenerative and progressive condition in his spine called "ankylosis spondylitis," which restricts his mobility and his ability to stand or walk for extended periods of time. He thought appellant was fifteen percent impaired and that his condition was manageable. The chiropractor opined that appellant would be disabled in approximately ten years and that presently appellant could perform work using his head and hands. Although appellant testified that he was unable to do any physical labor and that he did not know of any job that he was capable of performing, he was a chicken farmer up until the court ordered the farm sold. Also, appellant said that he had not applied for social security disability benefits.

The record reflects that appellant was fifty-six years old at the time of trial, that he had a high school education, and that he had mechanic, carpentry, and welding skills. Appellant also testified that he had experience as an auto-parts salesman. Although appellant may have been required to change employment, I do not believe the record commands an award of alimony on that basis.

Moreover, appellee's latest affidavit of financial means dated October 1995 reflected a weekly take-home pay of $560.00, or an approximate $28,000.00 annual net pay. Appellee's receipt of compensation in excess of this amount was to reimburse her for the personal use of her automobile on her mail carrier route, which she said was about eighty-eight miles each day. Appellee also testified that she was paying the college tuition and expenses for the parties' son. In my opinion, the evidence was such that the chancellor could reasonably have found that the difference in appellee's income and appellant's earning capacity was not significant.

Further, in making its decision concerning alimony, the chancellor may take into account the property awarded to the parties. *Bolan v. Bolan*, 32 Ark. App. 65, 796 S.W.2d 358 (1990). Here, appellant was awarded one-half of the sale proceeds from the marital home, one-half of seven bonds in $500.00 denominations, and one-half of appellee's retirement and savings plan.

It is well established that an award of alimony is left to the sound discretion of the chancellor and his decision will not be reversed absent a clear abuse of discretion. *Bolan, supra.* I cannot say that the chancellor abused his discretion in declining to award alimony to appellant.

I would affirm.

JENNINGS, J., joins in this dissent.