Gary FRIGON *v.* Sue FRIGON

CA 98-1241                                                989 S.W.2d 931

Court of Appeals of Arkansas
Division III
Opinion delivered May 19, 1999

*Ramsay, Bridgforth, Harrelson & Starling,* by: *Rosalind M. Mouser,* for appellant.

*Baim, Gunti, Mouser, DeSimone & Robinson,* by: *Kenneth B. Baim,* for appellee.

OLLY NEAL, Judge. Gary Frigon appeals from an order of the Jefferson County Chancery Court finding that two withdrawals made by Frigon from his pension plan should be included as income for setting his child-support obligation. We cannot say that the chancellor abused his discretion in making his findings of fact and, therefore, affirm.

On June 14, 1991, the trial court entered a divorce decree pursuant to a complaint for divorce filed by Frigon on May 29, 1991. Frigon and appellee, Sue Frigon, had been married 13 years at the time the divorce decree was entered and were both practicing physicians in the Pine Bluff, Arkansas area. Frigon later relocated to Bentonville, Arkansas where he established a new medical practice. In a partial property-settlement agreement, appellee was awarded custody of the parties' minor child and, in turn, Frigon agreed to pay appellee $1,750 per month for child support. The trial court, however, reserved jurisdiction to enforce matters of custody and support upon the petition of either party.

On October 24, 1994, the trial court entered an order in regard to a motion for modification of support and visitation filed by Frigon. Upon agreement of the parties, the trial court ordered Frigon to pay child support in the following manner:

> (a) Beginning October 1, 1994, the amount of monthly child support to be paid by Gary Frigon for the benefit of [the parties' child] is reduced to $1,000.00 per month. This amount of child support shall continue until March 30, 1996.
>
> (b) On or before April 1, 1996, Gary Frigon shall calculate the amount of his child support for the next twelve-month period based on the following formula: [Frigon's] child support shall be equal to 13 percent of his gross adjusted income as reflected on his federal income tax return, less deductions for federal, state, self-employment taxes. Additionally, if [Frigon's] federal income tax return includes *a deduction for a payment made to [Frigon's] pension account, the amount of that pension payment shall be added to his net income for purposes of determining child support.* (Emphasis added.)
>
> (d) If [Frigon's] actual earnings for 1995 reflect that [Frigon's] monthly child support obligations for the period between October 1, 1994, and March 30, 1995, should have been either more than or less than $1,000 per month, [Frigon] shall adjust his child support payment for the next twelve-month period to include or deduct the amount of underpayment or overpayment made in that preceding eighteen-month period.
>
> (e) The base amount, with appropriate adjustments, shall be paid until April 1997, at which time the amount of child support will be recalculated based on [Frigon's] 1996 earnings. The parties will continue to use the methodology provided herein to determine the amount of child support that [Frigon] shall pay on a yearly basis.
>
> (f) [Frigon] shall begin paying the adjusted amount of child support on April 1 of each year. Further, on April 1 of each year, the parties shall enter into an interim order setting forth the amount of child support for the following year. At the time the interim order is entered, [Frigon] will also provide [appellee] with a copy of his federal income tax returns, along with his schedule C. [Frigon] will be allowed to deduct from his federal income tax returns all information relating to any earnings of his

present wife, Sandi Frigon. After entry of the interim order, which shall not be prejudicial to either party, [appellee] will have thirty days to file a petition challenging the increase or decrease in child support. If [appellee] does not petition the court during this period of time, the child support set forth in the interim order shall become the amount to be paid by [Frigon] until the following year.

On February 7, 1997, the trial court entered an interim order to adjust Frigon's child-support obligation based on Frigon's 1995 tax return and the formula set out in its 1994 order. The trial court stated that Frigon's 1995 tax return reflected that his net income was $51,800, or $4,316.67 monthly. Thereafter, the trial court applied 13% to Frigon's monthly income and established that his child-support obligation was $561.17 per month. On March 3, 1997, appellee filed a petition to object to the calculations set forth in the February 7 order. She alleged that the calculations used to determine the appropriate child support from October 1994 to April 1996 were incorrect and that the same calculations should not be used to determine child support from April 1996 to April 1997. Appellee affirmatively pled that Frigon's 1995 income information was incomplete and that she had not received information on Frigon's 1996 income. Frigon denied that the 1995 information was incomplete, but admitted that the 1996 information had not been forwarded to appellee.

In an amended petition filed on November 5, 1997, appellee prayed for the trial court to determine any arrearage of child support in 1995, 1996, and 1997, and to determine the methodology used to calculate the child-support payments.

On March 25, 1998, appellee filed a letter brief to the trial court asserting that Frigon's pension withdrawal of $71,000 in 1995, and a withdrawal of $42,500 in 1996, should be included in calculating Frigon's 1995 and 1996 income for child-support purposes. Appellee contended that, as a result, Frigon incurred an arrearage of $7,298 in child support as of October 1997. In his letter brief, Frigon asserted that his pension contributions should be treated as income in the year they were made, but not in the year they were withdrawn. The trial court, however, found that the parties agreed that Frigon's child support would be equal to

13% of his gross adjusted income as reflected on his federal income tax return, less federal, state, and self-employment taxes. The trial court also found that the agreement of the parties mirrored the child-support guidelines established by the per curiam opinion of Arkansas Supreme Court on October 25, 1993, and that if Frigon's federal income tax return included a deduction for a payment made to his pension account, the amount of that pension payment would be added to his net income for purposes of child support. We note that the $42,500 and $71,000 withdrawals from Frigon's pension plan were not from any deductions on which child support had been calculated. Thus, the trial court found that the two pension withdrawals from Frigon's pension plan should be considered as income for setting Frigon's child-support obligation. The trial court concluded that the parties intended that Frigon's future contributions to his pension plan be included as income to Frigon for setting his child support. Nearly one month later, the trial court determined that Frigon's total child-support arrearage was $12,023 as of March 31, 1998.

Frigon argues that the child-support provision in the 1994 order addresses only contributions to his pension plan, which he agrees should be added back to his adjusted gross income. He contends that the order, however, is silent as to the treatment of withdrawals from his pension plan and that he has overpaid $12,287.24 in the years of 1995 and 1996, as reflected in the February 1997 order. Frigon further contends that the chancellor's findings have the effect of allowing an inequitable modification to the property-settlement agreement between the parties because a portion of the contributions made to his pension plan was partly monies he received from the property settlement.

■ The amount of child support lies within the sound discretion of the chancellor, and the chancellor's findings will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *Mearns v. Mearns*, 58 Ark. App. 42, 946 S.W.2d 188 (1997).

■ In this case, there is no case law that directly addresses whether income for purposes of child support should include a withdrawal from the pension plan of the noncustodial parent.

However, Arkansas has established child-support guidelines to determine the sum that a noncustodial party must pay to meet his or her child-support obligations. *See In re Guidelines for Child Support*, 314 Ark. 644, 863 S.W.2d 291 (1993). In 1993, Arkansas established that income for the purposes of child-support calculations was identical to the definition of income stated in the Federal Internal Revenue Code, which states that "except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: . . . (11) Pensions; . . . ." 26 U.S.C. § 61(a) (1994).

■ Here, the 1994 order is not controlling because it is silent as to pension funds acquired by Frigon before the order was filed. However, we must point out that the terms of the 1994 order do not conflict with the 1993 child-support guidelines established by the Arkansas Supreme Court, in that monies available to Frigon in 1995 and 1996 should have been accessible to the parties' child for support purposes. Both the 1993 guidelines and the 1994 order provide that Frigon's federal income tax return would be the basis for determining income for his child-support obligation. Although Frigon argues that the trial court, in effect, modified the parties' property-settlement agreement by including his pension withdrawals as income for child-support purposes, we have stated that the chancellor always retains jurisdiction and authority over child support as a matter of public policy, and that, no matter what an independent contract states, either party has the right to request modification of a child-support award. *Warren v. Kordsmeier*, 56 Ark. App. 52, 938 S.W.2d 237 (1997); *Terry v. Terry*, 28 Ark. App. 169, 771 S.W.2d 321 (1989).

■ Therefore, we conclude that the trial court did not abuse its discretion in finding that the withdrawals from Frigon's pension plan are included as income for determining child support.

Affirmed.

BIRD and STROUD, JJ., agree.