ROBERTS *v.* KEASLER.

4-7404                                    182 S. W. 2d 382

Opinion delivered October 2, 1944.

*Bon McCourtney* and *T. J. Crowder,* for appellant.

*Kirsch & Cathey,* for appellee.

SMITH, J. It is not complained in this case that any competent testimony was excluded, or any incompetent testimony admitted; nor is it complained that any erroneous instructions were given or any correct instructions refused. We are asked to review the judgment from which is this appeal upon the sole ground that it is contrary to the undisputed testimony heard at the trial.

The suit is in replevin for the possession of an automobile, and the testimony said to be undisputed was

given by the appellant, Ira Roberts, and one C. C. Collins, and is to the following effect: Roberts was the owner of the car, and was compelled, at a pistol's point, to execute a bill of sale for the car and to deliver the possession thereof to one Fred Bryson. No consideration was paid, although the bill of sale recited a consideration of $1,000, and the insistence is that inasmuch as this testimony was undisputed, it was arbitrary for the jury to have disregarded it and to have returned a verdict, as was done, for the defendant appellee, Louis Keasler. We are unable to say, however, that the jury acted arbitrarily in disregarding this testimony, although there was no direct contradiction of it in view of other testimony in the case.

Roberts and Collins are ex-convicts, the first having been convicted of burglary, the other of robbery. These men, in company with Fred Bryson and Roy Thompson, drove in Roberts' car from Paragould, in this state, to Cairo, Illinois. There was testimony about a fifth person, a boy, being in the car, but his identity and whereabouts were not disclosed. There is some conflict in the testimony of Roberts and Collins as to their destination when they left Paragould, and the testimony is not clear as to their mission, except that it related to the purchase of whiskey, sold in violation of the law, and a confidence scheme involving a gadget used to make counterfeit money.

Roberts and Collins testified that returning home, and just before crossing the state line, Bryson, abetted by Thompson, leveled his pistol on Roberts, and restrained both Roberts and Collins of their liberty until they had compelled Roberts to execute a bill of sale for the car to Bryson. Subpoenas issued for Bryson and Thompson were not served, and neither appeared at the trial, and their presence is unaccounted for except that the subpoena issued for Bryson contained a notation made by the sheriff that Bryson was in Flint, Michigan.

Upon the return of these tourists from their mission, whatever it may have been, they went to the home of a reputable, and well known lawyer, and told him they

wanted a bill of sale prepared to evidence the sale of an automobile which was being sold by Roberts to Bryson. This attorney testified that there appeared to be nothing unusual in the transaction, except the lateness of the hour, and that he accompanied the parties from his home at about 10:00 p.m., to his office, where he was furnished the information necessary to prepare the bill of sale, and that he observed nothing unusual in the demeanor of the parties while he was doing so. They were in his office about twenty-five or thirty minutes.

Roberts produced a registration certificate for the car, which gave his residence as Leachville in Mississippi county, but he stated to the attorney that he was then a resident of Greene county. The registration certificate and bill of sale were delivered to Bryson without the attorney's suspicions having been aroused that anything unusual had occurred.

The parties separated after leaving the attorney's office within two or three blocks of the county jail in the center of Paragould, where the sheriff or his deputy is constantly on duty, but no complaint was made to these officers. There is a conflict in the testimony of Roberts and Collins as to what they did and where they went after leaving the attorney's office, but the following day they went to Jonesboro and consulted one of the attorneys who filed this suit, but they made no report to any officer of the alleged robbery which they testified had occurred June 22d. Within two or three days after the alleged holdup by Bryson and Thompson, Collins and Roberts were arrested on warrants issued upon the affidavit of Bryson for the offense of obtaining money under false pretense, and then, for the first time, Collins told the sheriff of Greene county that he wanted to see a federal officer, but never at any time did Roberts and Collins have a warrant issued for the arrest of Bryson.

At about 7:00 p.m. on June 23d, about twenty-four hours after the alleged holdup, there was filed for record in Craighead county a mortgage from Roberts to one W. L. Akins, covering the car here in controversy, which recites that it was executed on April 15, 1943, to secure

a note for $700, due June 15, 1943. There is no explanation as to why this mortgage had not been filed for record earlier, or as to why it was filed in Craighead county at all, as none of the parties resided in that county. Immediately after the filing of this mortgage the sheriff of Craighead county and a State Ranger were instructed by someone to contact Keasler and recover possession of the car under the mortgage. Keasler refused to surrender possession of the car, and nothing further appears in the record about this mortgage, and the jury may have concluded that the alleged mortgage was a part of the plan to recover the car.

Keasler's good faith in purchasing the car from Bryson is not questioned. About 3:00 o'clock in the afternoon following the alleged holdup, Bryson proposed to sell the car to Keasler, and they went to the office of a notary public, across the street from the courthouse, where Bryson produced the bill of sale and the registration certificate, and the notary prepared a bill of sale from Bryson to Keasler, reciting a cash consideration of $875 which Keasler paid with a check, and Bryson cashed the check that afternoon at the bank, after banking hours.

The cause was submitted to the jury under the instruction that if the jury found that the bill of sale from Roberts to Bryson, and the delivery of the possession of the car, were obtained through fear and intimidation on the part of Bryson, or others, to find for the plaintiff. This was the issue of fact in the case, and the jury evidently did not believe the testimony of Roberts and Collins, and we cannot say that the unanimous verdict of the jury, disregarding this testimony, was arbitrary, and the judgment must, therefore, be affirmed, and it is so ordered.