E. C. BARTON AND COMPANY d/b/a
EUDORA LUMBER COMPANY *v.*
Hubert NEAL and Tom and
Carolyn JONES

77-228                                562 S.W. 2d 294

Opinion delivered March 6, 1978
(In Banc)

*W. K. Grubbs, Sr.,* for appellant.

*Holloway & Haddock,* by: *James W. Haddock,* for appellees.

JOHN A. FOGLEMAN, Justice. Hubert Neal, a building contractor, built a dwelling house for Tom and Carolyn Jones. He purchased materials to use in the construction from E. C. Barton & Company d/b/a Eudora Lumber Company, and for use on other construction jobs, one of which was a dwelling house for Bobby Stepp on a lot adjacent to that on which the Jones house was built. Neal became delinquent in his accounts. The lumber company sued Neal and the Joneses, seeking to recover $2,982.12 for materials it alleged were furnished for use in the construction of the Jones dwelling. The company sought judgment and a lien on the Jones property. The Joneses filed a third party complaint against Neal seeking judgment over against him for any amount they were required to pay the lumber company. Neal and the Joneses, in separate answers, denied all material allegations of the complaint.

The chancery court found that between May 22, 1975 and September 3, 1975, appellant delivered materials of the value of $2,978.08 to Neal to be used in the construction of the Jones house for which receipts were given by Neal or one of his employees, and that all of these materials except that represented by three of these invoices were delivered to Neal or his employees at the appellant's place of business but that there was no proof that the materials were ever delivered to

the job site. The three invoices totalled $1,063.87. The court gave judgment for this amount, and granted a lien on the Jones property to secure its payment. We affirm because we cannot say that the decree was clearly against the preponderance of the evidence.

The three tickets for which the judgment was given were signed by an employee of appellant and showed delivery to the Jones job site. Appellant recognizes that, under our decisions, the burden is on the materialman to show that the materials for which he claims a lien were used in the improvement on which a lien was sought, but is critical of the reasoning upon which this rule rests, saying that it results from a misapplication of language in *Central Lumber Co.* v. *Braddock Land & Granite Co.*, 84 Ark. 560, 105 S.W. 583, 13 Ann. Cas. 11. This rule has been stated and followed, however, without exception. See *Stone Mill & Lumber Co.* v. *Finsterwalder,* 249 Ark. 363, 459 S.W. 2d 117; *Lyle* v. *Latourette,* 209 Ark. 721, 192 S.W. 2d 521; *Half Moon Gin Co.* v. *E. C. Robinson Lumber Co.,* 207 Ark. 483, 181 S.W. 2d 239; *Marianna Hotel Co.* v. *Livermore Foundry & Machine Co.,* 107 Ark. 245, 154 S.W. 952; *Reiff* v. *Redfield School Board,* 126 Ark. 474, 191 S.W. 16. We do not consider *Hill* v. *Imboden,* 146 Ark. 99, 225 S.W. 330 to be an exception, although appellant views it as such. In *Hill,* we simply held that the evidence was sufficient to meet the lien claimant's burden and that the findings of the chancellor in that case were not against the preponderance of the evidence.

Appellant seems to think that *Pratt* v. *Nakdimen,* 99 Ark. 293, 138 S.W. 974, Ann. Cas. 1913A 872, tended to limit the application of the *Central Lumber Company* case, to render the "use" requirement improper. We do not agree. We simply pointed out in *Pratt,* that the question in the earlier case was "When does the lien of the material furnisher attach under the mechanic's lien statute?" while the question in *Pratt* was whether the contractor had an ownership in the materials subject to attachment after they had been delivered to the building site but before they had been used in the building. The fact remains that the language used in *Central* was a construction of the language of Ark. Stat. Ann. § 51-601 (Repl.

1971), giving the lien. *Reiff* v. *Redfield,* supra. This conclusion is inescapable when the language of the opinion in *Central* is considered. We said:

> Statutes like this, using almost the same language, have been construed differently; some courts holding that the materials furnished for the building must be actually used in its construction or repair before it can become a lien under such statutes, while others hold the actual use of the materials is not requisite, if they are furnished for the particular building or improvement. Phillips on Mechanics' Liens (3d Ed.) §§ 148-162; 2 Jones on Liens (2d Ed.) § 1329; 20 Am. & Eng. Encyc. 346, and cases cited.

> We prefer the former construction. We think the statute was intended to enforce justice; that the party who has enhanced the value of the property by the incorporation therein of his material or labor shall have security in the same for the amount due therefor. In this way the owner is compensated for the incumbrances, and justice is done to all parties.

That construction of the statute became as much a part of the statute as the words of the statute itself, and change is a matter that addresses itself to the General Assembly, not this court. *Merchants' Transfer & Warehouse Co.* v. *Gates,* 180 Ark. 96, 21 S.W. 2d 406. This rule is particularly applicable when, as here, the construction has been followed for many years. *O'Daniel* v. *Brunswick Balke Collender Co.,* 195 Ark. 669, 113 S.W. 2d 717. We are not persuaded that our construction of the statute has been so clearly erroneous that we should not continue to follow it.

Appellant contends that the evidence in the case clearly established a prima facie case to support a judgment and lien for the full amount of the invoices introduced (except for a trivial amount of $4.04) and that, by failing to give judgment for that amount, the chancery court arbitrarily rejected evidence of delivery of the materials to the building site and that the finding that proof of delivery was insufficient except as to those invoices for which judgment was given was erroneous.

We have always held that the lien claimant established a prima facie case by showing that the materials for which he claimed a lien were delivered at or near the building site at the place designated by the contracting party and that the building was constructed of materials of the description of those furnished; and, when this is shown, the burden rests upon the owner to show that they were not so used. *Central Lumber Co.* v. *Braddock Land & Granite Co.*, supra; *Half Moon Gin Co.* v. *E. C. Robinson Lumber Co.*, supra. See also, *Long* v. *Abeles & Co.*, 77 Ark. 156, 93 S.W. 67; *Fine* v. *Dyke Bros.*, 175 Ark. 672, 300 S.W. 375, 58 ALR 907.

The evidence of delivery and use here was based upon testimony of John Hicks, appellant's manager, and that of Hubert Neal, the contractor. We do not agree with appellant that the evidence here is "as much as" that we found sufficient to meet the burden in *Hill* v. *Imboden*, supra, where we held that the chancellor's finding sustaining the lien was not against the preponderance of the evidence. In *Hill*, the contract of the supplier was with the owner and the only question at issue was whether the evidence was sufficient to establish that all the items of materials on the account were delivered to appellant or to the premises where they were to be used in the construction of buildings. The contract was to supply all the materials for the buildings. The supplier produced delivery slips he had made out when materials ordered by the owner or workmen in charge of work on the buildings were loaded on appellant's wagon for delivery, but not all of the slips had been signed by the owner or by workmen on the job, although it was the duty of the driver to procure a receipt so signed on a copy of a slip and it was the custom of the workmen on the job to sign the slips. In spite of this, and the failure of the supplier to produce the driver to show delivery, it was held that the evidence was sufficient to support the trial court's finding that the evidence of delivery was sufficient because the supplier testified he had given the owner an itemized account identical to that on which suit was brought, the owner not only made no objections to it, he promised to pay it and the owner had called the supplier out to view the buildings constructed, expressed himself as being satisfied and did not make any objection to the account.

There is no such evidence here. John Hicks, appellant's manager, testified that the tickets or invoices were made out by salespersons employed by the lumber company in the regular course of business when orders were made and showed the job to which the material was to go on the basis of information supplied by the person ordering the material. He did not know whether any of the tickets could be mixed up as to jobs to which the material was to go. The material, he said, was delivered to the person who initialed them and all bore the signature of the person as the recipient of the material. Hicks testified the material was picked up by the person who signed the tickets as the recipient. He stated the material would have been picked up by Neal or one of his employees in all cases, except where the tickets showed delivery by appellant's driver. He said he had been to the Jones house and that it contained material of a type similar to that described in the tickets, but admitted he could not be sure there was sheetrock in the Jones house and the material listed could have been for either of the two houses being constructed side by side by Neal at the time. The trier of fact would have been justified in drawing the inference that the absence of the signature of anyone as recipient of the material indicated that it had not been delivered or received by the person who purportedly ordered it. There was no evidence of tacit approval of the itemized account by the owner in this case, or of the owner's actually having seen the account before the lien was filed.

Neal testified that he had reviewed the invoices and that there would be very little, if any, that did not go into the Jones house. It seems from his testimony that he had been also doing a repair job on a house called the Old Hensley residence at about the same time he was building the Jones and Stepp houses. Appellant argues that the testimony of Neal concluded the matter and that the chancellor could not ignore it in the absence of contradictory testimony. Of course, Neal did not testify as to any specific item and his ambiguous statement certainly cannot be taken as positive evidence that all of the items went to the Jones house. Of course, Neal was a party to the action and his testimony cannot be taken as uncontradicted. It is true, as appellant points out, that we have not applied this rule literally, but have said

that "where the uncontradicted testimony of an interested witness is unaffected by any conflicting inferences to be drawn from it and is not improbable, extraordinary, or surprising in its nature, or there is no other ground for hesitating to accept it as a truth, there is no reason for denying the finding of verity dictated by such evidence." *Knighton* v. *International Paper Co.*, 246 Ark. 523, 438 S.W. 2d 721.

The inference could be drawn from Neal's testimony that there was at least some doubt that every item on the account went to the Jones house. Just how much "very little" amounts to we do not know and the chancellor could not have known. Furthermore, a fact finder is not bound to accept sketchy and conclusionary testimony of a party to a suit as uncontradicted. *Smith* v. *Cruthis*, 255 Ark. 217, 499 S.W. 2d 852.

There was also some basis for the trier of fact to question the credibility of this witness. There is evidence from which the chancellor would have been justified in finding that Neal had deliberately misapplied a payment made to him by the Joneses to another account with appellant. The owners' check for this payment was not delivered to appellant, but Neal gave his own check for the amount of the payment to Hicks, who testified that Neal told him to apply it to the account for the repair job. Neal denied that he told Hicks to make this application, but assumed that the check represented the payment by the Joneses and that it should have been applied to the Jones material account, as it appears to have ultimately been. Even though Neal was furnished statements by appellant showing that this payment was credited to the repair job and was not credited to the Jones account, he made no objection until appellant threatened to file a lien, and he was asked to get a lien release. Neal also testified that he had made two $1,500 payments to appellant at about the same time, one of which was from the Stepp job and the other from the Jones job. Hicks testified that this was not so. It is clear that the first check given by Neal for this payment "bounced," and was charged to Neal's personal account, but that about three months later, Neal gave cash to appellant in lieu of the check. It is not arbitrary for a fact finder to disregard testimony of a party it does not believe, if

there is any basis for its disbelief. See *Roberts* v. *Keasler*, 207 Ark. 655, 182 S.W. 2d 382.

There is no explanation of the reason that Neal would take the money of appellees and cause it to be credited to another account, leaving the Joneses vulnerable to a lien which would require them to make a double payment of that amount; but, if he did, he certainly was not favoring them and he may have been biased against them in his testimony. We cannot say that the trial court arbitrarily disregarded the testimony of Neal on this point. It had the right to weigh Neal's testimony in the light of his conduct and all the attendant circumstances. *Bridges* v. *Shapleigh Hardware Co.*, 186 Ark. 993, 57 S.W. 2d 405. To say the least, his conclusionary statement is contrary to the fair inference that neither he nor any of his employees actually received the materials listed on tickets which did not bear the signature of the recipient.

The chancellor was not bound to accept this testimony of Neal as true, since a reasonable inference contrary to this testimony could have been drawn from the facts stated or from other facts and circumstances shown by the evidence unfavorable to his conclusion. *Harris* v. *Bush*, 129 Ark. 369, 196 S.W. 471.

The decree is affirmed.

HARRIS, C.J. and BYRD, J., dissent.