Harold J. BURNS, Jr. *v.* Janet L. BURNS

92-863                                     847 S.W.2d 23

Supreme Court of Arkansas
Opinion delivered February 15, 1993

*Hixson, Cleveland & Rush*, by: *David L. Rush*, for appellant.

*Shock, Whitmire & Harp*, by: *Jeanne Anne Whitmire*, for appellee.

ROBERT H. DUDLEY, Justice. The primary issue in this divorce case is whether we continue to hold, as we did in *Durham v. Durham*, 289 Ark. 3, 708 S.W.2d 618 (1986), that the language of our marital property statute does not include nonvested military retirement benefits. We again construe the statute in the same way. The chancellor did not follow the *Durham* case, and, on that point, we modify. We affirm on all other points of appeal.

The appellant husband, Major Harold J. Burns, received a commission in the United States Army in May 1977. He and appellee, Janet Burns, married in June 1980, separated in May 1991, and divorced in January 1992. The chancellor found that on the date of the divorce the appellant had been in the Army almost fifteen years, but that his military pension will not vest until he has served twenty years. The chancellor awarded the wife an interest in the nonvested retirement benefits that the husband

may receive. The husband filed a post-trial motion citing *Durham* v. *Durham*, 289 Ark. 3, 708 S.W.2d 618 (1986), and asking the chancellor to reconsider the issue of the nonvested retirement benefits. The wife responded with a brief that began: "If Defendant's interpretation of *Durham* v. *Durham*, 289 Ark. 3, 708 S.W.2d 618 (1986), is correct, it is bad law," and continues, "Plaintiff welcomes a review of this Court's ruling by an appellate court." Apparently the chancellor was persuaded that a review of our decision should be had since he ruled that the husband "will" have retirement benefits and the "wife . . . is entitled to her interest therein as a wife of the defendant and a dependent of a military service person, but this interest shall be only for that period of time that the parties were married during the defendant's military service." The husband appealed. The court of appeals certified the case to this court. Understandably, the husband's first assignment of error is that the trial court erred in awarding the wife a part of the nonvested military retirement. The assignment of error is well taken.

In 1979, the General Assembly enacted the current marital property statute. "Marital property" means "all *property* acquired subsequent to marriage," with certain enumerated exceptions not applicable to this case. Ark. Code Ann. § 9-12-315 (b) (Supp. 1991). Prior to our decision in *Day* v. *Day*, 281 Ark. 261, 663 S.W.2d 719 (1984), we had not recognized pension benefits as marital property. However, in *Day*, we held that *vested* pension benefits acquired during a marriage are marital property and subject to division. In that case the husband's interest was vested as it could not be diminished by his employer, and it was not dependent upon continued employment with that employer. The husband contributed 10% of his salary into a retirement program, and that contribution was matched by his employer. At the time of the divorce, the husband and the employer together had contributed $62,498.10 into the program, and the accumulated value of his interest was $95,425.03. The contributions were divided in two funds. One was invested in bonds and mortgages to provide guaranteed fixed annuities for participants in the plan, and the other was invested in stocks to provide a variable annuity. The amount of the annuities were based upon the accumulated value of the employees' interest in each of the funds. At the time of the divorce the husband could stop making contributions and

begin receiving his annuities. We construed this pension annuity benefit to be *property* under the statute. We reasoned that it was comparable to the husband taking part of his salary and depositing it in a savings account each month, or paying part of his salary on an annuity each month. It was property. We said that neither spouse could deprive the other of an interest in *property* simply by placing it temporarily beyond his or her control, such as by the purchase of an annuity.

Two years later, in *Durham* v. *Durham*, 289 Ark. 3, 708 S.W.2d 618 (1986), we held that a nonvested right in military retirement did not constitute *property* as contemplated by the marital property act. We wrote:

> The proof is that Durham will not be entitled to a pension until he has served for at least 20 years. Until then, unlike the professor in *Day* v. *Day*, 281 Ark. 261, 663 S.W.2d 719 (1984), Major Durham has no vested right that must be recognized as marital property. He is employed by the United States; so Congress could at any time change his retirement plan or abolish it. Durham's expectancy is more like the expectancy of termination pay that we considered in *Lawyer* v. *Lawyer*, 288 Ark. 128, 702 S.W.2d 790 (1986). The appellant relies upon the Uniformed Services Former Spouses' Protection Act, 10 USCA § 1408 (1983), but that federal statute merely provides that the military authorities may treat a serviceman's retirement pay as the property of him and his spouse in accordance with state law. *No independent property right is created in the spouse by the federal act. In this instance no such right exists under Arkansas law.*

*Id.* at 5, 708 S.W.2d at 619 (emphasis supplied.)

Nonvested military retirement benefits lack the following characteristics of property: cash surrender value, loan value, redemption value, lump sum value, and a value realizable after death. *Baker* v. *Baker*, 421 A.2d 998 (N.H. 1980).

The general rule in states with statutes similar to ours is set out in American Law Reports as follows:

> Retirement or pension benefits that have not vested at all have been held explicitly or implicitly by the courts, in

noncommunity property states having statutes providing for equitable division of the spouses' property upon divorce, not to be property subject to division or direct consideration in making such equitable property divisions.

Charles C. Marvel, Annotation, *Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses*, 94 A.L.R. 3d 176, § 13 (c) (1979).

■ In sum, our marital property statute requires that all *property* acquired subsequent to the marriage be divided, with certain exceptions not applicable. We have construed the statute to mean that nonvested military retirement benefits to which the serviceman or servicewoman may become entitled in the future are not property. This interpretation of the statute has now become a part of the statute itself, and we should not now reinterpret it. In *E.C. Barton & Co.* v. *Neal*, 263 Ark. 40, 43, 562 S.W.2d 294, 295 (1978), we explained: "That construction of the statute became as much a part of the statute as the words of the statute itself, and change is a matter that addresses itself to the General Assembly, not this court." *See also Gibson* v. *Gibson*, 264 Ark. 418, 572 S.W.2d 146 (1978).

Accordingly, we decline to reverse our construction of the marital property statute and leave change, if any, in the word "property" to the General Assembly. Accordingly, we modify the trial court's final order to provide that the wife is not entitled to an interest in whatever military pension the husband may be entitled to receive in the future.

■ The husband makes several other arguments, but none have merit. In the first of these he argues that the chancellor erred in giving the wife custody of the children. The wife's expert witness, a clinical psychologist, testified that she had a stable personality, and another expert testified that the father had a stable personality. We have held that, even in a *de novo* review, we will not set aside a chancellor's decision unless it is "clearly wrong." *Pinkston* v. *Pinkston*, 278 Ark. 233, 644 S.W.2d 930 (1983). We cannot say the decision in this case is clearly wrong.

■■ The husband's main contention is that the chancellor's decision is erroneous because the wife admitted having

intercourse with another man on two occasions. Fault in the divorce is not necessarily the determining factor in awarding custody since an award of custody is neither a reward nor a punishment for a parent. *Johnson* v. *Arledge*, 258 Ark. 608, 527 S.W.2d 917 (1975). The children's welfare is the controlling consideration. *Id.* Here, the wife candidly admitted the affair and stated that it was a regrettable mistake. She also stated that it was not conducted in front of the children, and that she has not been involved with anyone else. Under these facts we cannot say the chancellor erred. *Accord, Hoing* v. *Hoing*, 28 Ark. App. 340, 775 S.W.2d 81 (1989).

The husband contends the chancellor erred in ordering child support and alimony, as well as ordering him to make house payments. In the original decree the husband was ordered to pay $1,090.00 per month child support. He was also ordered to make house payments of $769.00 per month until the wife moved from the home, at which time the $769.00 monthly payment was to be converted to alimony for a period of twelve months. After the post-trial motion, the chancellor amended the order to make it clear that the husband was to make either the house payment or the alimony payment, but not both at the same time. The husband attached a copy of his earnings statement to his post-trial motion, and after examining it, the chancellor decreased the amount of alimony to $710.00, when it becomes payable, but increased the amount of child support to $1,150.00

The husband contends that the amount of child support is not in conformity with the child support chart. *See In re: Guidelines for Child Support Enforcement*, 301 Ark. 627, 784 S.W.2d 589 (1990). He argues that the amounts of pay that are designated on the earnings statement as BAS OFF and BAQPD do not constitute income since the guidelines provide that "income" for purposes of calculating child support shall be the same as income for federal income tax purposes. He contends that BAS OFF, or basic allowance for subsistence for officers, and BAQPD, or bachelor's allowance for quarters with dependents, are not income under the Internal Revenue Code. The argument may have merit, but it is not one that we reach because the chancellor was not apprised of the issue, and we do not consider issues raised for the first time on appeal. *Menard* v. *City of Carlisle*, 309 Ark. 522, 834 S.W.2d 632 (1992).

■■ The husband contends that he should not pay alimony because the wife's adulterous relationship caused the divorce. Fault is not a factor in deciding whether to award alimony unless it relates to need or the ability to pay. *Murphy* v. *Murphy*, 302 Ark. 157, 787 S.W.2d 684 (1990). The fault of the wife in this case is not relevant to the decision to award alimony to her. The ability of a party to pay and the need of the other party are primary factors to be considered in awarding alimony. *Russell* v. *Russell*, 275 Ark. 193, 628 S.W.2d 315 (1982). Here, the ability of the husband to pay a limited amount of alimony was demonstrated, and the chancellor ordered a reasonable amount. In addition, the chancellor relieved him of paying alimony while he was making the house payments. The need of the wife was shown. She has not worked during the time of the marriage and has no job skills. She does not have a college degree, but hopes to obtain one in order to be better able to support herself and the children. The twelve-month award of alimony will help her finish college. An award of alimony lies within the discretion of the chancellor and will not be reversed absent an abuse of that discretion. *Wilson* v. *Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987). Under the circumstances of this case, we cannot say the chancellor erred in awarding alimony for twelve months commencing when the wife moves out of the house. Since this is a *de novo* review, and since we have reduced the amount awarded as marital property, we have considered increasing the amount of alimony, but we do not do so because the amount awarded by the trial court, when coupled with the child support, relates well to the husband's ability to pay.

■ The husband's next argument involves some bank withdrawals and credit card advances amounting to about $3,000.00. The wife testified that she used credit card advances and funds she withdrew from a joint bank account to pay part of her and the children's living expenses, car expenses, and her attorney's fee during the pendency of this action. The husband argues that the chancellor erred in refusing to allow him a set-off for half of this amount. No citation of authority is given. Parties to a divorce case must often use marital funds to meet necessary expenses incurred during the pendency of the action, and a chancellor has discretion to determine when it is necessary to use these funds, whether the amount used was reasonable, whether

fraud or overreaching occurred, and whether an offset is appropriate. The chancellor obviously thought the amount used in this case was reasonable and necessary under the circumstances and should not be offset. We cannot say the chancellor abused his discretion.

Finally, the husband argues that the chancellor abused his discretion in ordering him to pay part of the wife's attorney's fee in the final order of divorce. The argument is without merit. An award of an attorney's fee is within the discretion of the trial court in a divorce case and will not be reversed absent an abuse of discretion *See Scroggins* v. *Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990). The chancellor did not abuse his discretion in this case.

Affirmed as modified.

Hays and Brown, JJ., dissent.

STEELE HAYS, Justice, dissenting. In *Durham*, v. *Durham*, 289 Ark. 3, 708 S.W.2d 620 (1986), we affirmed the chancellor's refusal to award Mrs. Durham an interest in whatever military pension Major Durham may be entitled to receive upon retirement. We distinguished *Day* v. *Day*, 281 Ark. 261, 663 S.W.2d 719 (1984), on the basis that Major Durham had no vested right that might be recognized as marital property because Congress could change his retirement plan at any time or abolish it outright.

I find it difficult to reconcile our case or to square the *Day* and *Durham* decisions. I recognize that there is a theoretical difference between Dr. Day's retirement plan and Major Durham's but not in practical terms. Congress could, of course, terminate military retirement by a single act, but the likelihood of that happening is remote in the extreme and I am persuaded that for the purposes of marital property the two situations are without a practical difference. Besides, the chancellor's award to Mrs. Burns is conditioned on Major Burns actually receiving retirement benefits and is limited to a pro rata share determined by the length of the marriage.

We have said that chancellors are given broad powers under Ark. Code Ann. § 9-12-315 (Supp. 1991) to distribute property in divorce, *Williford* v. *Williford*, 280 Ark. 77, 655 S.W.2d 398

(1983), and implicit in *Day* is the principle that the legislative purpose behind § 9-12-315 should not be frustrated by drawing controlling differences on technical grounds. I believe we should overrule *Durham* v. *Durham, supra*, bring our cases into alignment and apply *Day* uniformly. I would affirm the decree.

Brown, J., joins in this dissent.