Howard W. Brill, Chief Justice, concurring in part and dissenting in part. I ml agree with the majority that the circuit court’s order is final and appeal-able, but I strongly dissent from' the part of the opinion in which the majority decides, sua. sponte, to break from precedent and overrule Layman v. Layman, 292 Ark. 539, 731 S.W.2d 771 (1987), Farrell v. Farrell, 365 Ark. 465, 231 S.W.3d 619 (2006), and Brown v. Brown, 373 Ark. 333, 284 S.W.3d 17 (2008). “[T]he doctrine of stare decisis is of fundamental importance to the rule of law.” Hilton v. S. Carolina Pub. Rys. Comm’n, 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (quoting Welch v. Tex. Dep’t of Highways & Pub. Transp., 483 U.S. 468, 494, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987)). Adherence to precedent is necessary to promote “stability, predictability, and respect for judicial authority.” Id. Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable. E.g., Cochran v. Bentley, 369 Ark. 159, 174, 251 S.W.3d 253, 265 (2007). “[W]hen a principle has- been once declared and acquiesced in,' in subsequent cases it should be adhered to, unless great injury and injustice would necessarily result from such adherence.” Roane v. Hinton, 6 Ark. 525, 527 (1846). Statutes should receive a consistent and uniform interpretation so that they, shall not be taken to mean' one thing at one time, and a different thing at another time. See Morris v. McLemore, 313 Ark. 53, 55, 852 S.W.2d 135, 136 (1993). When a statute has been construed, and that construction has been consistently followed for many years, such construction should not be changed. Id., 852 S.W.2d at 136. Nearly three decades ago, this court construed the property-division statute at issue in this case to mean that when one spouse makes significant contributions of time, effort, 114and skill which are directly attributable to the increase in value of nonmarital property, the presumption arises that such increase belongs to the marital estate. Layman, 292 Ark. at 543, 731 S.W.2d at 774. Since then, the legislature has not amended the statute in any way to express its disagreement with our decision in Layman. Legislative silence for nearly thirty years gives rise to an arguable inference of acquiescence or passive approval' of our construction of the statute. See Chapman v. Alexander, 307 Ark. 87, 90, 817 S.W.2d 425, 427 (1991). The General Assembly is presumed to be familiar with the appellate' courts’ interpretation of a statute, and if it disagrees, it can amend the statute. E.g., Tyson Poultry, Inc. v. Narvaiz, 2012 Ark. 118, at 7, 388 S.W.3d 16, 21. Without such amendments, however, the appellate courts’ in? terpretation of the statute remains the law. Id., 388 S.W.3d at 21; see also Neal v. United States, 516 U.S. 284, 296, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996) (“Congress, not this Court has the responsibility for revising its statutes. Were we to alter our statutory' interpretations from " cases to case. Congress would have less reason to exercise its responsibility to correct. statutes that are thought to be unwise or unfair.”); Francis v. S. Pac. Co., 333 U,S. 445, 450, 68 S.Ct. 611, 92 L.Ed. 798 (1948) (stating that the longstanding interpretation of the statute itself becomes “part of the warp and woof’ of the legislation); E. C. Barton & Co. v. Neal, 263 Ark. 40, 43, 562 S.W.2d 294, 295 (1978) (recognizing that this court’s construction of a statute becomes as much a.part of the statute as the words of the statute itself and that change is a matter that addresses itself to the General Assembly, not this court).[2] |1BUnder the separation-of-powers doctrine, the legislature has the power and responsibility to proclaim the law through statutory enactments, and the judiciary has the power and responsibility to interpret legislative enactments. McCutchen v. City of Ft. Smith, 2012 Ark. 452, at 15, 425 S.W.3d 671, 681; see also Ark. Const. art. IV, §§ 1, 2. It was up to the legislature to amend the statute if it disagreed with our interpretation. See, e.g., Burns v. Burns, 312 Ark. 61, 65, 847 S.W.2d 23, 26 (1993) (declining to reverse our construction of the marital-property statute and leaving change, if any, in the word “property” to the General Assembly). The General Assembly has not done so, and this court should not act in its stead. 11(¡Finally, I am troubled by the majority’s decision to overrule Layman, Farrell, and Brown because neither party requested that those cases be overruled. Neither party had a quarrel with the rule announced in Layman and followed in Farrell and Brown. Rather, David contended that Farrell was inapplicable because the facts in his case were distinguishable from the facts in Farrell. Nancy contended that Farrell was controlling. Nevertheless, without the aid of briefs and without having been requested to act, this court overrules itself and reverses the circuit court, which properly followed our longstanding precedent. As a general rule, “[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.” Castro v. United States, 540 U.S. 375, 386, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003) (Scalia, J., concurring in part and concurring in judgment). “[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.” Greenlaw v. United States, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008); see also Adam A. Milani and Michael R. Smith, Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts, 69 Tenn. L.Rev. 245, 252 (2002) (stating that sua sponte decisions by appellate courts are inconsistent with the adversary process because they are “contrary to its (1) central premise that the adversarial clash provides a court with the best arguments and analysis on an issue, (2) emphasis on neutral and passive decision makers, and (3) commitment to party presentation of evidence and arguments”). It is clear that the majority disagrees with the rule announced in Layman. But the validity of that rule is not before the court. Judge Richard Arnold wisely stated that courts “do not, or should not, sally forth each day looking for wrongs to right. We wait for cases [17to come to us, and when they do we normally decide only questions presented by the parties.” United States v. Samuels, 808 F.2d 1298, 1301 (8th Cir.1987) (R. Arnold, J., concurring in denial of reh’g en banc). The question of whether the court should overrule Layman and its progeny should be reserved for another day. Wynne, J., joins. . Perhaps the most famous example of adherence to statutory precedent is the decision of the Supreme Court of the United States in Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972), in which the Court was asked for the third time in fifty years to rule that professional baseball’s reserve system was within the reach of federal antitrust laws. See Fed. Baseball Club of Baltimore v. Nat’l League of Prof'l Baseball Clubs, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922) (holding that the business of providing public baseball games for profit between clubs pf professional baseball players was not within the scope of federal antitrust laws); Toolson v. N.Y. Yankees, Inc., 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64 (1953) (per curiam) (reaffirming baseball’s exemption from federal antitrust laws and stating that any change in statutory precedént should come from Congress). In 1970, Curt Flood, the All-Star- center-fielder, filed an antitrust suit in federal court challenging the transfer of his contract from the St. Louis Cardinals to the Philadelphia ■Phillies. Even though baseball ■ appeared to be the only professional sport operating interstate that was exempt from antitrust laws, the Court would not alter its longstanding statutory interpretation. The Court opined, If there is any inconsistency or illogic in all this, it is an inconsistency and illogic of long standing that is to be remedied by the Congress and not by this Court. If we were to act otherwise, we would be withdrawing from the conclusion as to congressional intent made in Toolson and from the concerns as to retrospectivity therein expressed. Under these circumstances, there is merit in consistency even though some might claim that beneath that consistency is a layer of inconsistency. Flood, 407 U.S. at 284, 92 S.Ct. 2099. The Court never changed its interpretation of the statute. Congress acted when it passed the Curt Flood Act of 1998, 15 U.S.C. § 26(b), which addresses the application of antitrust laws to the reserve clause of major league baseball.